**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Charles JOHNSTON, a/k/a Chuck, James A. Webber and Ronald Day Plumlee, Defendants-Appellants.**

**No. 76–2154**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1977.

Rehearing and Rehearing En Banc Denied March 28, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

David A. Demers, St. Petersburg, Fla., for John Charles Johnston and Ronald Day Plumlee.

Richard H. McInnis, Tampa, Fla. (court appointed), for James A. Webber.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Terrance A. Smiljanich, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

These three defendant-appellants appeal their convictions for mail fraud and conspiracy to commit mail fraud.[1] They present four issues for review. First, they argue that they did not cause the United States mails to be used in connection with fraud. Second, they contend that the use of the mails was not sufficiently related to the fraudulent scheme to trigger federal jurisdiction. Third, they submit that their indictments and trials were improperly joined. Fourth, one defendant, Ronald Plumlee, argues that the prosecution did not offer sufficient evidence to connect him to the conspiracy. We reject these contentions and affirm the judgment of the district court.

This conspiracy involved ten persons, seven of whom have pleaded guilty to charges of mail fraud and conspiracy. The fraud consisted of a series of banking transactions. The defendants would deposit, as "currency", worthless checks usually drawn on out-of-state banks. Through bank error,

---

1. 18 U.S.C. § 1341 states in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . or knowingly causes to be delivered by mail according to the direction thereon, . . . any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 371 states in part:

If two or more persons conspire either to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

these deposits would often be credited immediately to accounts as currency, and the accounts would not be frozen until the checks cleared. After determining that the currency credits had occurred, the defendants would withdraw cash from the accounts before the check clearing process returned the original, now dishonored, checks. After a jury trial, Johnston was convicted of seven counts of mail fraud, Plumlee of six counts, and Webber of one count. All were convicted of conspiracy.

■ *United States v. Maze*, 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, establishes a two-pronged jurisdictional standard to test the relationship of the United States mails to fraudulent schemes. A fraudulent scheme will constitute a federal crime if the defendant "causes" the mails to be used and if the mails are "sufficiently closely related to [the] scheme". 414 U.S. at 399, 94 S.Ct. at 648.

■ Regarding the first prong of the test, the Supreme Court has retained the causation standard announced in *Pereira v. United States*, 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435:

> [O]ne "causes" the mails to be used where he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . .."

414 U.S. at 399, 94 S.Ct. at 648. The record in this case shows that defendants Johnston and Webber were experienced businessmen and that defendant Plumlee was a finance major at the University of South Florida. It also shows that the mails were necessarily used in these interstate banking transactions. The district court therefore correctly held that the use was foreseeable. *See United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603; *United States v. Shepherd*, 5 Cir. 1975, 511 F.2d 119, *reh. denied*, 514 F.2d 1072.

Regarding the second prong of the test, the Supreme Court has instructed that the mailing must be "for the purpose of executing the scheme". 414 U.S. at 399, 94 S.Ct. at 648. But the scheme need not necessari-ly contemplate the use of the mails as an essential element. *Id.* This Court has recently upheld the application of the mail fraud statutes to two check-kiting schemes because the success of the schemes depended on the delay involved in the check-clearing process. *United States v. Shepherd*, 5 Cir. 1975, 511 F.2d 119; *United States v. Constant*, 5 Cir. 1974, 501 F.2d 1284, *cert. denied*, 1975, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840. The dependency on delay distinguished these cases from *Maze*, which involved standard credit card transactions that reached fruition before the mails were ever employed. In the present case, however, the fraud depended on the delay of the check-clearing process. The defendants did not attempt to cash their bogus checks or to withdraw cash coincidently with making the deposits. Instead, they waited until the bank had credited their accounts and then withdrew cash before the checks bounced. By the time the checks were returned through the mails by the payor banks, the defendants had withdrawn the money. The success of the scheme depended, then, on the delay caused by the use of the mail in the check-clearing process. *Shepherd* and *Constant* indicate that this relation between the scheme and the mail is sufficiently close to justify application of the federal criminal statutes.

■ The defendants also attack their convictions by asserting that they should have been tried separately. Rule 8 of the Federal Rules of Criminal Procedure expressly allows joinder of defendants if the Government alleges that they "participated in the same act or transaction or in the same series of acts or transactions constituting the offense or offenses." According to *United States v. Perez*, 5 Cir. 1973, 489 F.2d 51, 64, *cert. denied*, 1974, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664, joinder under the Rule is permissible when the defendants are properly charged with a single conspiracy. Here the bank fraud scheme, described by its organizer as a continuing fraud, constituted a single conspiracy. Although they never worked together, both defendants Plumlee and Johnston deposited checks

obtained from defendant Webber and co-conspirator Flanders, who pleaded guilty. The middleman in all of these transactions was the organizer of the fraud, Plumlee's father, Arnold, who also pleaded guilty. All of the transactions involved the same fraudulent technique, discovered jointly by Johnston and Arnold Plumlee and taught to the younger Plumlee by his father. The transactions also had a common object—to secure money from the banking system before it could discover the worthless checks. In fact, at one point both Johnston and Ronald Plumlee instituted transactions at the same bank. In addition, there was evidence that cash from earlier frauds financed later transactions. Consequently, the Government offered sufficient proof of a single conspiracy, and the district court properly joined the defendants who were involved in the same series of bank fraud transactions. *Id.* at 57–64.

The defendants cite *United States v. Marionneaux*, 5 Cir. 1975, 514 F.2d 1244, and *United States v. Bertolotti*, 2 Cir. 1975, 529 F.2d 149, to support their theory of improper joinder. Neither case applies to the present facts. In *Marionneaux*, we held that the Government could not join the defendants of two alleged conspiracies in a single trial. Here, of course, there is only one conspiracy. In *Bertolotti*, the Government attempted to join in one trial and one narcotics conspiracy nearly 30 defendants charged with a variety of crimes. The only common factor was the "presence" of two persons who pleaded guilty prior to trial. Police memoranda even treated the crimes as several separate conspiracies. Here, on the other hand, there are numerous common factors connecting the relatively few participants in the fraudulent scheme.

■ We also reject the contention of the defendants that their joint trial prejudiced their individual defenses in violation of F.R. Crim.P. 14.[2] Their theories of the case were remarkably consistent, relying mainly on the jurisdictional defense that the mails were not sufficiently related to the fraud. They did not attempt to transfer culpability to each other. The district court carefully instructed the jury that the case against each defendant should not be applied against the others. The Government was required to specify which piece of evidence applied to which defendant. The jury must have considered and followed the court's instructions, for it acquitted two defendants of separate counts involving two of the nine banking transactions. Consequently, the district court did not abuse its discretion by refusing to grant the motion for severance under Rule 14. *Tillman v. United States*, 5 Cir. 1969, 406 F.2d 930, *vacated on other grounds* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742.

■ Finally, we reject the contention of Ronald Plumlee that there was not sufficient evidence to connect him to the conspiracy. The record contains evidence that Ronald participated in all phases of the fraud—opening accounts, depositing bad checks with deposit slips that indicated currency deposits, withdrawing money from the accounts, and supplying blank checks to his father. He deposited checks supplied through his father by both Webber and another co-conspirator who pled guilty. He was acquainted with both of his co-defendants. All of the transactions for which the jury convicted him occurred after he learned that his first deposit-withdrawal transaction had utilized a check that later bounced. Arnold Plumlee testified that he explained to his son how the transactions worked. After making several of the withdrawals, Ronald split the money with his father and accumulated several thousand dollars. In short, sufficient evidence supported the jury's conclusion that a reasonable doubt did not exist regarding the participation of Ronald in the conspiracy.

AFFIRMED.

2.  F.R.Crim.P. 14 states in part:
    If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .