**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Harrison Odell LEACH,
Defendant-Appellant.**

**No. 79–5051.**

United States Court of Appeals,
Fifth Circuit.

March 17, 1980.

William K. Jennings, Fort Walton Beach, Fla., for defendant-appellant.

Emory O. Williams, Jr., Thomas R. Santurri, Asst. U. S. Attys., Pensacola, Fla., for plaintiff-appellee.

Before GODBOLD, HILL and POLITZ, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Harrison Leach was convicted by a jury of one count of violating 18 U.S.C.A. § 371 by conspiring to commit offenses against the United States, specifically mail fraud in violation of 18 U.S.C.A. §§ 1341 and 1342, and of seven counts of mail fraud in violation of these same statutes. On appeal he asserts that the trial court erred in (1) denying his motion for dismissal of count one and for severance pursuant to Rule 8(b) or Rule 14 of the Federal Rules of Criminal Procedure; (2) unduly restricting defense counsel's cross-examination of a government witness; and (3) allowing into evidence exhibits and statements of co-conspirators. We reject appellant's arguments and affirm his convictions.

A twenty-seven count indictment was returned against Harrison Leach, Rosemary Leach (his wife), Clarence Marler, Ronnie Steele, and Wilfred Reed. Count one charged all with a single conspiracy; counts two through six charged Harrison and Rosemary Leach, Marler, and Steele with interstate transportation to promote arson; counts seven through seventeen charged Harrison and Rosemary Leach, Marler, and Steele with mail fraud; counts eighteen through twenty-five charged Marler, Steele and Reed with mail fraud; and counts twenty-six and twenty-seven charged Marler and Steele with mail fraud.

Prior to trial and several times during the trial appellant moved for, *inter alia,* dismissal of count one and severance. He also made pre-trial motions to suppress statements made by co-defendants. Before trial began, Rosemary Leach was severed for health reasons. Trial on the twenty-seven count indictment commenced with Harrison Leach, Marler, Steele and Reed as co-defendants. At the close of the government's evidence, the trial judge determined that the evidence against appellant was insufficient to justify a conviction as to counts two through six (interstate transportation to promote arson), and fourteen through seventeen (certain mail fraud counts). He made similar determinations regarding other counts and other defendants and in-

structed the jury that only the conspiracy count and certain substantive counts remained for their consideration.

During defendant Reed's testimony, the trial court determined that his defense was antagonistic to the defenses of Marler and Steele and granted Marler and Steele's motion for mistrial, severed their cases, and ordered that they be rescheduled for trial.

Count seven was inadvertently omitted from the jury's consideration and after the trial the court dismissed that count. The jury found defendants Leach and Reed guilty of all counts submitted to them.

## JOINDER

Appellant's arguments that the trial court erred in not granting his motions to dismiss count one and to sever on the basis of Rule 8(b) Federal Rule of Criminal Procedure (joinder of defendants) are intertwined. Appellant asserts that count one in fact charged three conspiracies, not a single conspiracy, and that the joinder of defendants was improper under Rule 8(b) because neither the "conspiracies" nor the substantive counts alleged that the defendants "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" as Rule 8(b) requires. According to appellant, the conspiracy count (including the overt acts alleged) and the substantive counts allege that: (1) Marler and Steele conspired to defraud Nationwide Insurance Company in 1974 in connection with a fire at one house; (2) Marler, Steele and Reed conspired to defraud the Insurance Company of North America in 1975 and the early part of 1976 in connection with a fire at a different house; and (3) Marler, Steele, Harrison Leach and Rosemary Leach conspired to defraud Travelers Insurance Company in 1976 in connection with another fire at a third house. Appellant emphasizes the different properties, times, insurance companies, and groups of alleged conspirators. He also asserts that there was no evidence in the case that he had any knowledge whatever of defendant Reed, Brief of Appellant, at 46.

Appellant argues that Supreme Court opinions, especially *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), dealing with conspiracy and opinions of this circuit involving Rule 8(b), especially *United States v. Marionneaux,* 514 F.2d 1244 (5th Cir. 1975), *cert. denied, Partin v. United States,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), *United States v. Levine,* 546 F.2d 658 (5th Cir. 1977), and *United States v. Nettles,* 570 F.2d 547 (5th Cir. 1978), support his position. While appellant has cited language in these opinions that might appear to lend weight to his argument and has pointed to factual similarities between this case and cases where this court has found joinder improper under Rule 8(b), we find that a closer examination of the cases, especially those from this circuit, indicates that his claim cannot prevail.

*Kotteakos* involved an indictment that charged defendants with a single conspiracy. On appeal the government admitted that the evidence proved not one but several conspiracies and the Court held that the variance was a permeating error that affected the substantial rights of the defendants "when the only nexus among them lies in the fact that one man participated in all," *id.* 328 U.S. at 773, 66 S.Ct. at 1252. In *Blumenthal* five defendants were convicted of conspiring to sell whiskey at prices above the ceiling set by federal statute and regulation. The Court distinguished the facts from those in *Kotteakos,* stating:

The scheme was in fact the same scheme; the salesmen knew or must have known that others unknown to them were sharing in so large a project; and it hardly can be sufficient to relieve them that they did not know, when they joined the scheme, who those people were or exactly the parts they were playing in carrying out the common design and object of all. By their separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential fea-

tures and broad scope, though not of its exact limits, and by their common single goal. *Id.* at 558, 68 S.Ct. at 257. Appellant focuses on dicta in *United States v. Elliott,* 571 F.2d 880, 991 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), to support his assertion that the rationale of *Blumenthal* does not apply where remote members "are not truly interdependent or where the various activities sought to be tied together cannot reasonably be said to constitute a unified scheme," *id.* at 901.

Several possible tests for determining that a single conspiracy exists emerge from this brief review of an extremely complicated area of law—that the alleged conspirators: knew or should have known of the scope of the conspiracy; shared a common single goal; benefitted from each others' activities or participation; or, that the activities constituted a single unified scheme.

The indictment in the instant case charged that five persons conspired to commit offenses against the United States— specifically, mail fraud and interstate travel with the intent to promote arson—more specifically, that they conspired to devise a scheme to defraud various insurance companies in connection with fires that destroyed certain residences and used the mails to attempt to execute this scheme, and that they conspired to travel in interstate commerce with the intent to promote arson. Appellant argues that the enumeration of overt acts and substantive counts belies this assertion that all conspired together.

██ Of course the fact that Leach may have been the last to join the conspiracy has no bearing on this issue for it is not necessary that a defendant enter into the unlawful agreement at its inception. One can

properly be convicted of conspiracy although he was not a participant at the time the original scheme was concocted. *United States v. Jones,* 480 F.2d 954 (5th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 582, 38 L.Ed.2d 476 (1973). In deciding a Rule 8(b) motion, allegations of an indictment will be accepted as true in the absence of an argument of prosecutorial bad faith. *United States v. Levine,* 546 F.2d 658 (5th Cir. 1977). Further, in deciding this appeal we may look both at the face of the indictment and at evidence adduced at trial to determine whether joinder was proper.[1]

██ Appellant highlights the differences in time, place, participants, and victims in the allegations in the overt acts and in the substantive counts, differences which, according to him, show three non-joinable conspiracies and three distinct sets of nonjoinable substantive offenses. We find, however, that the indictment charged a single conspiracy and evidence presented at trial viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), showed: Marler and Steele both contributed to the purchase of all three houses; the same realtor handled all three purchases; each residence was overvalued for insurance purposes in part because the insured claimed construction or renovation work that was never done; the three houses were never occupied by their new owners (Marler, Reed, and the Leaches), and were totally destroyed by fire following explosions; in each instance various written records were absent, either because claimed transactions had not occurred or because large cash transactions had occurred; in each case a special bank account was set up for transactions involving the property; and substantial claims were submitted for

---

1. *Griffin v. United States,* 272 F.2d 801 (5th Cir. 1960) (as corrected on denial of rehearing). It is interesting to speculate whether the holding in *Griffin* (that the propriety of joinder need not be gleaned from the face of the indictments alone but that proof adduced at trial may show proper joinder and satisfy Rule 8) survived the holding in *United States v. Bova,* 493 F.2d 33 (5th Cir. 1974), (that improper joinder is inherently prejudicial and that granting a motion for severance is mandatory and not discretionary with the district court). *Griffin* has never been expressly overruled, however, and post-*Bova* panels of this Court have frequently reviewed evidence adduced at trial to determine the propriety of a district court's denial of a motion to sever under Rule 8. *See e. g., United States v. Zicree,* 605 F.2d 1381 at 1387–88 (5th Cir. Nov. 8, 1979); *United States v. Nettles,* 570 F.2d 547, 551–52 (5th Cir. 1978).

"lost contents" although each house was very sparsely furnished, if at all. The inventory lists for lost contents submitted for the first and second fires were remarkably similar; each contained great numbers of articles with identical names (sometimes with identical spelling errors) and prices, and many items appeared in the same sequence. The list submitted for the third fire was also similar, but less so. For example, all three lists contained a world globe, snorkles and fins in the same sequence and a guitar purchased at Ward's in 1972 for $69.95. Defendant Reed testified that he had known Marler and Steele for many years, had worked with them in the past, and that Steele was his wife's uncle. Rosemary Leach was Marler's sister.

Appellant vigorously asserts that Leach and Reed were homeowners with no connection with each other or with any overall conspiracy—that if either conspired at all, he conspired only with Marler and/or Steele in connection with his own property. In our view, however, based on the evidence, the jury could have found that each was at least aware of a conspiracy to defraud insurance companies that went beyond the single residence with which each was connected. Each was connected with Marler or Steele prior to any connection with the houses involved; each may have received a model inventory list and the fact that it was not custom-made could have put him on notice that the single incident was not the first in which Marler or Steele was involved. By the time Reed and Leach entered the conspiracy the modus operandi of the fraud was well worked out and the jury could have concluded that each was aware of this, in part because these detailed available plans indicated a scheme beyond a one-shot fraud. Further, evidence indicates that neither Reed nor Leach was simply a homeowner who approached or was approached by Marler and/or Steele. Rather, each was a paper title holder of property that Marler and/or Steele located and paid

for. Thus, the jury properly could have found that the five original defendants were part of a single conspiracy.[2]

This Court has repeatedly dealt with claims of improper joinder under Rule 8(b), often in cases involving charges of conspiracy. We find that the opinions in these cases support our conclusions in this case.

In *United States v. Perez*, 489 F.2d 51 (5th Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974), appellants claimed a fatal variance between the evidence and the indictment (that the evidence showed multiple conspiracies while the indictment charged one) and improper joinder under Rule 8(b). Defendants there were charged with conspiring to defraud and defrauding insurance companies through use of the mails. The scheme involved staging automobile collisions and filing personal injury claims and the conspirators included organizers, doctors, lawyers, drivers, and passengers. Unlike the present case, there

> [a]ppellants, with regard to the staging of each individual wreck, do not vigorously argue that knowledge and awareness of one conspirator, relative to the existence and general activities of the other conspirators, could not have been inferred.
>
> . . .
>
> [E]ach conspirator, once he knew he was to be involved in a staged collision, should have been aware of the others.

. . .

Here, appellant does vigorously argue that an inference that he knew or was aware of Reed's activities or of Marler and Steele's earlier activities is unwarranted. The Court noted in *Perez* that in a "chain" conspiracy the requisite element of knowledge of the existence of remote links may be inferred solely from the nature of the enterprise, citing *United States v. Bruno,* 105 F.2d 921 (2d Cir. 1938), *revd. on other grounds,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed 257 (1939). The appellants in *Perez* did not contend that the jury could not properly

---

**2.** The trial judge carefully instructed the jury that proof of several separate conspiracies would not be proof of the single overall conspiracy charged in Count I unless one of the

conspiracies proved was the single conspiracy that the indictment charged. Record, vol. 18, at 2175–76.

find individual chain conspiracies connected "since the participants overlapped to a degree and the activities performed were similar." 489 F.2d at 59. Instead, appellants urged that after the first collision, the original organizers set up two separate and distinct collision fraud operations that constituted two separate conspiracies. The court, however, found a single agreement that contemplated repetition of an activity sometimes with the same actors and sometimes not. *Id.* at 62. The court went on to note that to avoid detection it was necessary to vary the pattern of doctors and lawyers and to change passengers and claimants constantly. *Id.* at 62–63. In *Perez* it does not appear that any appellant was a passenger who participated in only one collision; indeed the court stated that the evidence indicated that all participants performed various functions and that they did so on repeated occasions, *id.* at 63 n. 22. In the present case appellant does argue that he neither was nor should have been aware of Reed's activities, that knowledge of Reed or of the earlier Marler and Steele fire cannot be inferred from the nature of the enterprise, and that the evidence shows that he did not participate on repeated occasions. We note, however, that while the Court in *Perez* did not need to base its holding solely on the nature of the enterprise, it did at least view that as one factor. The enterprises in both cases are insurance frauds perpetrated by submitting claims designed to appear unrelated; here, as there, it was necessary to vary claimants and insurance companies to avoid detection. Further, while the court in *Perez* mentioned participants' repeated participation, it also rejected appellants' claim that the fact that each participant benefitted only from the collisions in which he participated showed multiple conspiracies. We also note the following language in *Perez* :

> If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one

conspiracy. If that agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, then such agreement constitutes a single conspiracy. And the same is true as to an agreement that contemplates that the activity will be repeated sometimes with, sometimes not, the same actors.

*Id.* at 62 (citations omitted).

> In any event, in an instance such as the one presented by this case, with overlapping membership and activities all directed toward a common goal, most courts have found, as we do here, sufficient evidence to uphold a jury verdict reflecting a single conspiracy.

*Id.* at 63 (citations omitted).

This Court found joinder improper under Rule 8(b) in *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975), *cert. denied, Partin v. United States*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). There, however, the indictment alleged *two* conspiracies to obstruct justice, the manner of obstruction differed in each, and all conspirators but one differed in each count. In the present case, one conspiracy was charged, the manner of defrauding the insurance companies in each instance was basically identical, and even under appellant's view (three occurrences) Marler and Steele comprised at least two-thirds of the group of conspirators in each incident. According to *Marionneaux*, for proper joinder Rule 8(b) requires "substantial identity of facts or participants between the two offenses," *id.* at 1249. While that test uses the disjunctive "or," [3] here the indictment and proof at trial indicate substantial identity of both facts and participants.

Like the present case, *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977), involved a single conspiracy count (alleging that all defendants participated in one conspiracy) followed by substantive counts implicating fewer than all. The court first

---

**3.** For discussion and criticism of the inclusion of "or" in this circuit's test, see Note, *Harmless Error and Misjoinder Under the Federal Rules* *of Criminal Procedure: A Narrowing Division of Opinion*, 6 Hofstra L.Rev. 533, 561–64 (1978).

**1302**

found that absent the conspiracy count, Rule 8(b) would preclude a single trial of the otherwise unrelated substantive counts. According to the court, the words of an indictment charging a single conspiracy do not suffice to make joinder proper if the conspiracy charge is based on an improper legal interpretation. The court found that the indictment itself (including the overt acts and substantive counts alleged) showed proximate or simultaneous multiple conspiracies. The court found that one defendant, a filmmaker, had made two altogether separate agreements with two customers to make and distribute two illicit films. The government admitted that no direct evidence ever existed to show that either customer was aware "or should have been aware" of the other's film or activities. *Id.* at 664–65. The indictment there failed to show, as *Blumenthal, supra,* requires, that "each knew or must have known of their confederates and that they acted in the furtherance of a common plan," *id.* at 665. As we discussed above, the jury in the present case could have found that appellant was or should have been aware that the conspiracy had a scope beyond the single insurance claim in which he participated and that he acted in furtherance of that broader common plan. While it may be reasonable to suppose that each of the customers in *Levine* who approached a filmmaker who had ongoing legitimate business was not put on notice that the filmmaker was involved with any illicit film other than his own, Marler and Steele's alleged enterprise here was not merely an illegal offshoot of an ongoing legitimate business, but rather the enterprise (their connections with Leach, Reed, and each other, and with the properties here involved) was entirely for illegal purposes. That is, the jury could properly have inferred that appellant's contact with Marler and Steele itself put him on notice of an illegal enterprise with a wider scope and that that broader scope did not involve legitimate business.

This Court found joinder proper under Rule 8 in *United States v. Johnston,* 547 F.2d 282 (5th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 261 (1977).

Appellants were convicted of a single conspiracy and several mail fraud counts. The continuing fraud involved two defendants depositing bogus checks obtained from two codefendants and a fifth defendant serving as middleman and organizer. The Court found that all of the transactions involved the same fraudulent technique and had a common object—to secure money from "the banking system" before it could discover the worthless checks—and that some evidence indicated that cash from earlier transactions financed later transactions; therefore the government had offered sufficient proof of a single conspiracy. *Id.* at 284–85. The Court stated that *Marionneaux* announced the rule for joinder where *two* conspiracies are alleged. *Id.* In distinguishing a Second Circuit case, *United States v. Bertolott,* 529 F.2d 149 (2d Cir. 1975), the Court emphasized that in *Johnston* numerous common factors connected the relatively few participants in the fraudulent scheme. The *Johnston* court was not troubled about the multiple victim banks but viewed the scheme as directed at "the banking system"; we likewise are not troubled that the scheme here was aimed at multiple insurance companies. Here, as in *Johnston,* relatively few participants were involved and each transaction employed the same fraudulent technique. That the evidence in the present case may not have indicated that income from one transaction financed another does not require us to find multiple conspiracies, as the absence of similar evidence (that an individual benefitted from collisions in which he did not participate) did not so require the court in *Perez.*

Joinder was held improper in *United States v. Nettles,* 570 F.2d 547 (5th Cir. 1978), but there as in *Marionneaux* two conspiracies were charged and in *Nettles* appellants were not even charged with participating in the same conspiracy. Each appellant was charged with conducting a gambling operation and conspiring to obstruct justice by conspiring with local police to facilitate its operation. Appellants were not charged with conspiring with each other yet they were tried together. The court did

state in dicta, however, that a single conspiracy charge would not have made joinder proper. The facts and record indicated similar but separate conspiracies. The involvement of the same police officers did not provide the required substantial identity of facts or participants between the alleged conspiracies. Even assuming that the *Marionneaux* test applies where a single conspiracy *is* charged, in the present case we find substantial identity of both facts and participants.

Very recently this court rejected claims of improper joinder under Rule 8(b) in *United States v. Zicree*, 605 F.2d 1381 (5th Cir. 1979), and *United States v. Metz*, 608 F.2d 147 (5th Cir. 1979). The indictments in both cases charged a single conspiracy. The facts in *Zicree* show a stronger connection between the two appellants than the facts here show to connect Leach and Reed. The court in *Zicree* however, also likened a mail fraud scheme to the ongoing scheme in *Perez* and stated that in both cases "all participants must have intended to serve the same common objective and must have been aware of a larger scheme," at 1388. The court in *Metz* held that the indictment adequately showed a singular conspiratorial objective: a large scale narcotics transaction. A sale, preparations for another sale, and the plan to launder proceeds were adequately alleged as facets of the same drug distribution scheme. The court went on to say:

> That the indictment did not charge appellants with active participation in each phase of the conspiracy does not effect misjoinder. Nor need the indictment have charged that appellants knew all the participants or details of the conspiracy, so long as it alleged their knowledge of the conspiracy's essential nature.

At 153 (citations omitted). Here, as in *Zicree*, we find that the indictment and evidence adequately showed that all five original defendants intended to serve a common objective and were or should have been aware of a larger scheme. As in *Metz* we find that the three specific frauds were facets of a large scale scheme.

This court in *United States v. Ochoa*, 609 F.2d 198, at 200–02 (5th Cir. 1980), rejected appellants' claim that evidence was insufficient to support the jury's finding of a single conspiracy. The Court stated that personnel changes did not defeat such a finding. In addition to joint activities, the court found that interrelationships among defendants and the similarity of methods of operation at various times provided evidence of a common plan. In this present case, as noted above, relationships by blood, marriage, and prior employment were shown and the methods of operation in the three instances were practically identical.

■ We therefore find that joinder of appellant and co-defendants for trial was proper under Rule 8(b) and that the trial judge did not err in denying appellant's motion to dismiss count one of the indictment.

■ An appellate court will not reverse the trial court's denial of a motion for severance under F.R.Crim.P. 14 without an affirmative showing that the trial court abused its discretion. *United States v. Zicree, supra* at 1388. We find that appellant has failed to make such a showing.

## CROSS–EXAMINATION

Harold Brown, a claims adjuster for Travelers Insurance Company and prosecution witness, testified on direct examination that he had met with appellant and his wife following the fire that destroyed a house in Fort Walton Beach. He stated that they discussed "the background, how the house was purchased," Record, vol. 14, at 1240, including that "he and his wife were from the Lake Charles, Louisiana area. They had been to the Fort Walton Beach area before one time on vacation," Record, vol. 14, at 1242. When asked, "[A]nd he, [appellant] stated that they had been in the area one time before?" Brown answered yes, *id.*

On cross-examination Brown stated that he had taken notes of this conversation with the Leaches and that he had those notes with him. He gave the original to defense counsel and retained a copy on the

witness stand. He repeated that "they" had said they had been in the area one time in the past. When asked whether he based that statement on his "reflection" of his notes, he answered yes. Defense counsel questioned Brown about his testimony outside the presence of the jury a week earlier, asking him if he recalled then stating that it was his "impression" that Leach had been in the area only once, not that Mr. Leach had said so, and asked him whether he had talked with any attorneys since that testimony. He also asked Brown about entries at the bottom of the notes written with a different pen. Defense counsel then twice again asked Brown whether the portion of the notes written with a different pen was his reason for recalling that appellant stated he had been in the area one time before. Brown twice responded by asking what the note said. The following exchange, which appellant asserts constituted impermissible restriction of cross-examination, then occurred:

THE COURT: Mr. Jennings, does he have something there contrary to his testimony?

MR. JENNINGS: Yes, sir.

THE COURT: If so, the way to use it is to say that.

MR. JENNINGS: Yes, sir. I want to ask him if that's what he bases his recollection on, Judge.

THE COURT: Well, if it's something to impeach with, read it back to him instead of going at it the way you're doing it.

Q. Mr. Brown, you have a copy of your notes, do you not?

A. Yes, sir, I do.

Q. And the bottom thing that's signed there is a notation made in a different pen that says, "Both," something, "Louisiana, had been in area on vacation and liked area."

A. Yes, sir.

THE COURT: Mr. Jennings, that is not contrary to any thing he's testified about, sir. I don't understand if you're trying to use that as impeachment what else do you have?

MR. JENNINGS: You Honor, I'm using that as impeachment because it says nothing about having been in the area once before.

THE COURT: It is not inconsistent with his other testimony. It is not inconsistent with it, doesn't say how many times they've been there. You will not pursue this further, Mr. Jennings. Let's proceed.

MR. DEWRELL: Your Honor, could we approach the bench.

(At the bench)

MR. BEROSET: Your Honor, I respectfully submit I think it's for the jury to determine whether or not it's inconsistent, not the Court's determination.

THE COURT: No sir, Mr. Jennings is entirely wrong as using that as impeachment material. That was the ruling made and I'll stay with it. It was not inconsistent with his testimony. All it said was that they'd been over here and liked it. It had nothing to say about how many times they had been here before. I'm not going to take up time with things like this. . . . The trouble is that Mr. Jennings brought this on by improper impeachment, as I see it.

. . . . .

MR. JENNINGS: I would like to move for mistrial on the basis he's being denied effective assistance of counsel by refusing to let me cross examine in the matter.

THE COURT: Motion denied.

Id. at 1255–57. Defense counsel Dewrell further cross-examined Brown about Mr. Leach's saying he had been "in the area" only once, asking him whether the location of the house was not some distance from the location of his meeting with the Leaches, id. at 1258–59. The trial judge refused to admit these notes into evidence, finding they were "not proper impeachment," id. at 1267.

■ In his brief, appellant correctly points out that cross-examination is a critical tool to assure a defendant's right to a fair trial and his sixth amendment right of

confrontation, especially where the subject matter sought to be covered is essential to the case, the witness' testimony is important to the government's case, or a defendant seeks to question a witness on matters pertinent to his credibility. He also correctly states that a trial judge's restrictions on cross-examination will not be reviewed except for an abuse of discretion. In our view, Brown's testimony that Leach told him he had been in the area only once was not particularly important to the government's case nor was the fact that Brown had omitted "once" from his notes essential to the defendant's case. Rather, the significance of the attempted cross-examination lies in the fact that defense counsel sought to impeach the witness.

It is true that a witness may be impeached by showing that he earlier omitted to mention a matter about which he now testifies or that earlier he did not relate it with such detail. *See, e. g.,* 3A J. Wigmore, Evidence § 1042(2), at 1057. The trial judge found that Brown's notation stating that the Leaches "had been in the area on vacation and liked area" was not inconsistent with his testimony that Leach told him that he had been in the area only once. We agree with the trial judge and certainly do not find that he abused his discretion in this ruling. The phrasing of the note may tend more to reflect a single visit than multiple visits. Unless one has stenographic or similar skills and a reason to use them, he will not transcribe every word of a conversation in which he is participating. To testify later in greater detail in response to detailed questions is not inconsistent, especially when the added detail was not crucial to the earlier conversation. While

[a] failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact,

*Id.* at § 1042, it was not necessarily "natural" for Mr. Brown to include "once" or "only once" in his notes. If, for example, it

was significant to the insurance company that the Leaches purchased the house without prior substantial contacts with the area, the notation "on vacation" would describe this. We note that immediately after the district judge limited the cross-examination defense counsel asked,

Q. And the recollection that you have of the conversation with Mr. and Mrs. Leach is based on the notes that you took that are reflected in defendant Leach's exhibit 1?

A. Notes and personal memory.

Q. And that personal memory is based on personal memory over, with over four hundred different fire losses involved over the last two years, is that correct?

A. Yes, sir. *Id.* at 1258.

Thus, defense counsel was permitted extensive cross-examination on this matter by questioning Brown about possible prior inconsistent testimony, and whether he had spoken with attorneys since the time of that testimony, using two pens to write the notes, the distance between the meeting place and the burned house, and the number of fire losses he had investigated. Further, if the trial judge had allowed defense counsel to impeach Brown with these notes, he would have had to charge the jury accordingly, instructing them that they might find the notes inconsistent with Brown's testimony. He did not abuse his discretion in finding no inconsistency and limiting cross-examination.

## ADMISSIONS INTO EVIDENCE

Appellant urges that the trial judge erred in admitting into evidence government's exhibit 50, the list of contents lost in the house fire.[4] As described above, this list bore a substantial resemblance to lists submitted for contents lost in the other two house fires. According to appellant, without this list the government would have failed to show Leach's connection with the conspiracy by a preponderance of the evidence (thus the admission of statements of co-conspirators would also have been improper) and failed to present sufficient evi-

---

4. We have also considered appellant's argument that his conviction be reversed because the trial judge admitted another government

exhibit, a proof of loss statement attached to a letter from a Louisiana attorney, and we find it to be without merit.

dence to sustain a guilty verdict on any count.

 While the inventory list and co-conspirator statements did not comprise the total evidence against Leach or the only evidence to connect him to the conspiracy, we do agree that the list was a very important piece of evidence. The list was attached to a letter signed by a Scotty Rozas of Lake Charles, Louisiana; in the letter Mr. Rozas referred to Harrison Leach as his client. Mr. Brown, a claims adjuster for Travelers, testified that he had requested various documents from the Leaches through Mr. Rozas and had received the letter and attached inventory list through the mails in response to his requests. Following Brown's testimony, defendant objected to the admission of this exhibit on the grounds that the government had not properly identified or authenticated the exhibit by showing that Rozas was Leach's attorney. The district judge sustained this objection and did not then admit the exhibit, record, vol. 14, at 1267. Rowlett Bryant, an attorney who represented Travelers, then testified that he had taken the deposition of Rosemary and Harrison Leach and that he had a copy of the inventory list with him during these depositions. He stated that with Mr. Leach present he first questioned Mrs. Leach and "went through the contents of the list in some detail" with her, record, vol. 15, at 1296. He then deposed Mr. Leach and reviewed parts of it with him. Bryant did state during cross-examination that he did not recall which specific items he discussed with Mr. Leach and that he did not specifically recall showing the list to Mr. Leach, *id.* at 1304–07. On direct examination, however, Bryant testified that Mr. Leach acknowledged the list as being an accurate statement of his personal property loss:

Q. Now, did you review the contents list with Mr. Leach?

A. Parts of it I did. Earlier, before taking his testimony regarding the loss I took the testimony of his wife and went through the contents list in some detail. He was present at that time. I generally referred to the list and asked him if he acknowledged the list as being an accurate statement of his personal property loss, which he did, and I discussed various items with him on it but not in detail as I did with his wife when he was present.

• • • • •

Q. Now, Mr. Bryant, at any time did Mr. Leach deny to you that this was his contents loss?

A. No.

*Id.* at 1296–97. We find that the trial judge did not err in admitting the inventory list following Bryant's testimony that he went over it in detail with Mrs. Leach in Mr. Leach's presence, referred to the list while deposing Mr. Leach and that Mr. Leach specifically acknowledged the list as an accurate statement of his loss.[5] The evidence, including the inventory list, supported admission of the statements of co-conspirators under the standard announced in *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), (en banc), and the judgment and convictions.

AFFIRMED.

---

5. Of course it would make no difference whether Mr. Leach himself prepared the list; his acknowledgement of the list as accurate was

sufficient. In fact, any inference that someone else prepared it might be further evidence of conspiracy.