UNITED STATES of America

v.

Gerald MILLER, Edward A. Gallagher, Morris B. Marsh, Thomas C. Matook, George V. McEvers, a/k/a John Martell, and Michael E. Smith.

No. 82 CR 509.

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1982.

Julian Solotorovsky, Asst. U.S. Atty., Chicago, Ill., for U.S.

John O'Neil, Providence, R.I., for Matook.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Thomas Matook was charged in a three-count indictment with aiding and abetting[1] the commission of the following offenses: (1) interstate transportation of stolen securities in violation of 18 U.S.C. § 2314;[2] (2) receipt and sale of stolen securities in violation of 18 U.S.C. § 2315;[3] and

---

1. 18 U.S.C. § 2 provides in pertinent part:
   (a) Whoever aids [or] abets [the] commission [of an offense against the United States], is punishable as a principal.

2. 18 U.S.C. § 2314 provides in pertinent part: Whoever transports in interstate ... commerce any ... securities ... of the value of $5,000 or more, knowing the same to have

been stolen ... shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

3. 18 U.S.C. § 2315 provides in pertinent part: Whoever receives, conceals, stores, barters, sells, or disposes of any ... securities ... of the value of $5,000 or more ... knowing the same to have been stolen ... shall be fined

(3) conspiracy to commit the aforementioned offenses in violation of 18 U.S.C. § 371.[4] After a bench trial before this Court, Matook moved for acquittal pursuant to Federal Rule of Criminal Procedure 29.[5] For reasons set forth below, we find Matook guilty of aiding and abetting the illegal delivery and sale and guilty of aiding and abetting the conspiracy; but not guilty of aiding and abetting the illegal transportation.

## I. *The Evidence*

On July 31, 1980, in Rhode Island, Michael Smith asked his friend Thomas Matook to accompany him on a one-day "business trip" to Chicago. Smith told Matook that he would pay the airfare and "take care" of Matook after the trip. Matook later told government agents that he assumed Smith would pay him $500 to $1,000. In a signed statement introduced at trial, Matook also said: "I realize that Smith was up to criminal activity. However, I did not know what Smith was actually to do in Chicago." Government Ex. M–2. Smith testified at trial that he wanted Matook along as a bodyguard to "watch his back," but allegedly never mentioned his reason to Matook. On August 1, 1980, Smith and Matook boarded a flight from Warwick, Rhode Island, to Chicago. At the time, Smith was carrying $825,000 worth of stolen securities.

At O'Hare Airport in Chicago, Smith and Matook met George McEvers, introduced by Smith as "John" (Martell). The three men rode together in a cab from the airport to the Bismarck Hotel in Chicago. Smith la-

ter testified that the only mention of the securities during the cab ride came when Martell asked Smith if he was "carrying what he had." Smith also testified that at the Bismarck, outside the presence of Matook, he gave one of the stolen securities to Martell.

Later, at the Bismarck, Smith, Matook and Martell met Patrick Hayes, an undercover Chicago police officer. Martell introduced Matook to Hayes as "Victor." At one point, Matook stood outside of a hotel room door while Smith, Martell and Hayes met within. Martell arranged to dispose of all the stolen securities through Hayes.

Martell and Hayes then walked from the Bismarck to the Continental Bank. Smith and Matook followed closely, looking around continuously as they walked. At the bank, Smith handed the securities to Martell in a manilla envelope. Matook sat next to Smith at that time. Then Martell and Hayes entered a conference room. Matook stood and watched outside of the conference room. As other government agents (at a pre-arranged signal from Hayes) approached the conference room to arrest Martell, Matook took off to alert Smith. Shortly thereafter, Smith and Matook and the other co-conspirators were arrested.

Matook is charged in each count with aiding and abetting the commission of the crimes described. The two components of aiding and abetting are: (1) an act on the part of the defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission.[6] *United States v. Greer,* 467 F.2d 1064, 1069 (7th Cir.1972). Despite his presence with the co-conspira-

---

not more than $10,000 or imprisoned not more than ten years, or both.

4. 18 U.S.C. § 371 provides in pertinent part: If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to affect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

5. Rule 29 provides in pertinent part: The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on

either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

6. In the seminal case on aiding and abetting, *United States v. Peoni,* 100 F.2d 401 (2d Cir. 1938), Judge Learned Hand stated that aiding and abetting requires that the defendant

in some sort associate himself with the venture, that he participate in it as in something he wishes to bring about, that he seek by his action to make it succeed.

*Id.* at 402.

tors before and during the commission of the crimes, Matook denied knowing anything about the stolen securities. Specifically, Matook contends that he never had knowledge of the stolen securities until subsequent to his arrest. Smith testified that at no time prior to their arrest was Matook told about the stolen securities.

The principal question presented by the evidence is whether Matook had the requisite intent to find him guilty as an aider and abettor on each of the charges discussed below.

## II. Count I: Conspiracy

The federal crime of conspiracy has two basic elements: (1) an agreement between two or more persons to commit a crime; and (2) an overt act in furtherance of the illegal agreement. 18 U.S.C. § 371. Since he is charged with aiding and abetting a conspiracy, once the conspiracy has been established, it must also be shown that Matook aided and abetted the conspiracy. The juxtaposing of the offenses of aiding and abetting and conspiracy in the same count of an indictment provide a basis for broadly expanding criminal liability with respect to complicitous parties. An aider and abettor is punished for assisting in the commission of a crime. A conspirator is punished for joining with one or more others in a plan to commit a crime regardless of whether the planned crime is actually committed. When aiding and abetting principles are combined with those of conspiracy, the law approaches the outer limits of culpability based upon complicity.[7]

Nevertheless, the relevant federal statutes provide that aiding and abetting a conspiracy is indeed an offense. Federal conspiracy is a separate substantive offense; on its face, the aiding and abetting statute applies to all substantive offenses. 18 U.S.C. § 2. The Supreme Court has implicitly recognized that one may be convicted for aiding and abetting a conspiracy. *United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). *See also United States v. Simpson,* 11 F.2d 591 (4th Cir.1926), *cert. denied,* 271 U.S. 674, 46 S.Ct. 488, 70 L.Ed. 1145 (1926). However, an aider and abettor to a conspiracy must have known that a conspiracy existed. *Falcone, supra,* 311 U.S. at 208, 61 S.Ct. at 205; *Direct Sales Co. v. United States,* 319 U.S. 703, 709, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943).

A defendant is not culpable of aiding and abetting a *conspiracy* merely by aiding and abetting the commission of a *crime which is the object of a conspiracy, see Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946), or by associating with persons who are members of a conspiracy. *Panci v. United States,* 256 F.2d 308, 312 (5th Cir. 1958). What must be shown is that: (1) the defendant knew the conspiracy existed, *Falcone, supra;* (2) he understood the essential nature of the plan, *Greer, supra,* 467 F.2d at 1067, *United States v. Andolschek,* 142 F.2d 503, 507 (2d Cir.1944); and (3) he sought to make the plan succeed. These are the three components of the state of mind requirement for aiding and abetting a conspiracy.[8]

---

7. At least one court has doubted whether one who aids and abets a conspiracy without joining the agreement should be punished as a conspirator. *United States v. Perry,* 643 F.2d 38, 47 (2d Cir.1981). *See also United States v. Middlebrooks,* 618 F.2d 273, 278–79 (5th Cir.), *modified in part,* 624 F.2d 36 (5th Cir.1980). Some commentators suggest that culpable aiding and abetting of a conspiracy can only exist when a defendant facilitates the formation of the illegal agreement. Note, *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 934–35 (1959). Other scholars maintain that aiding and abetting one of the overt acts will suffice if coupled with knowledge of the

conspiracy and an intent to aid it. *See* Perkins, *Parties to Crime,* 89 U.Pa.L.Rev. 581, 596–604 (1941); Comment, *Complicity in a Conspiracy as an Approach to Conspiratorial Liability,* 16 UCLA L.Rev. 155, 162 (1968). The latter view seems more consonant with the principle that one may aid and abet the commission of a crime without necessarily being involved in all aspects of that crime.

8. The Court is not unmindful of the fact that a conviction on a federal conspiracy charge generally requires proof of at least the degree of criminal intent required for the object substantive offense. *See United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d

Turning to the facts of the present case, there is at least a reasonable doubt as to whether Matook was aware of a conspiracy *before* he arrived in Chicago. Smith and Matook both stated that Matook knew nothing specific. There is no evidence that prior to departure Matook had contact with anyone in Chicago or that Matook had agreed to join with those in Chicago. There is also no proof that Matook had information from which he should reasonably conclude that the venture was one which would typically require other complicitous actors. *See, e.g., United States v. Bridgeman,* 523 F.2d 1099, 1111 (D.C.Cir. 1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976).

*Once in Chicago, however,* Matook could readily observe that Smith was acting in concert with others to carry out his criminal plan. Matook, Smith and Martell were together in Chicago, both during a cab ride from O'Hare Airport to the Bismarck, and thereafter. Although it may be argued that Matook actually became aware of the details of the plan, i.e., learned about the stolen securities, during such meetings which preceded the attempted sale at the Continental Bank, this circumstantial evidence does not constitute by itself proof beyond a reasonable doubt of the requisite knowledge. It is conceivable that Matook may have remained ignorant of the details. Nevertheless, we may infer from his presence during discussions between Smith and Martell that Matook either learned or had reason to know that the criminal plan required the cooperation of several persons, including himself. Such knowledge, when coupled with Matook's later physical cooperation, removes all doubt from whether Matook knew he had joined a conspiracy. The

minimum threshold of *Falcone, supra,* the first component of the state of mind requirement, is therefore satisfied.

The second component, that Matook understood the essential nature of the agreement, is likewise established by the evidence. For example, Matook did not object when Martell introduced him to Agent Hayes under the alias of "Victor." And when Smith and Matook followed Martell and Agent Hayes on their walk from the Bismarck Hotel to the Continental Bank, Matook was continuously looking around. This conduct is consistent with Smith's testimony that he brought Matook along for protection—to "watch his back." Matook stood guard outside the door while Martell and Hayes met in a room at the bank and warned Smith when government agents approached the room. Matook denied intending to serve as lookout, yet his conduct establishes circumstantially that he understood his role in the plan.

Matook admitted facts which establish his desire to make the plan succeed. In return for his effort, he expected to receive $500 to $1,000 from Smith after the successful completion of the trip. Though Matook's anticipated reward may be small compared to the $825,000 value of the securities, it is suspiciously large if Matook actually believed Smith only sought his companionship. Further, the fact that Matook expected to be paid *after* the deal was completed supports the view that his stake in the venture was contingent upon its success. Matook knew that sometime during the trip he would aid Smith's criminal activity. By his actions in Chicago, Matook demonstrated his basic understanding of the plan and his desire to make it succeed.

541 (1975); *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959); *United States v. Muncy,* 526 F.2d 1261, 1264 (5th Cir.1976). One might argue that this rule on the surface might mandate proof that Matook knew stolen securities were involved, because the object offense here, under § 2315, requires knowledge of the stolen character of the securities. Such reasoning would apply, however, only in the absence of proof that Matook knew the plan was criminal—knowl-

edge that Matook admitted. Matook's purported ignorance of the specific crime does not bar conviction, in light of proof that he was nevertheless aware that he was assisting an agreement to engage in criminal activity. Conspiratorial liability can extend to one who embarks upon a criminal venture with an understanding of the essential nature of the plan. *United States v. Greer,* 467 F.2d 1064, 1069 (7th Cir. 1972); *United States v. Andolschek,* 142 F.2d 503, 507 (2d Cir.1944).

The government is not required to prove that Matook knew all the details of the plan or all its members. *United States v. Feola,* 420 U.S. 671, 692, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975); *Blumenthal v. United States,* 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). Further, it would not avail Matook to argue that he did not understand the essential nature of the plan until after its inception.[9] *United States v. Leach,* 613 F.2d 1295, 1299 (5th Cir.1980); *United States v. Bates,* 600 F.2d 505, 509 (5th Cir.1979). Nor does it matter that he played only a minor role in the venture.[10] *United States v. Wilson,* 500 F.2d 715, 724 (5th Cir.1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

### III. *Counts II and III: The Substantive Crimes*

Both § 2314 and § 2315 generally require proof that the defendant knew of the stolen nature of the securities involved. *E.g., United States v. Gallo,* 543 F.2d 361 (D.C. Cir.1976). Matook argues that he did not know securities were involved, let alone that they were stolen. The government suggests that as an aider and abettor, Matook need not have precisely the same knowledge which would be required of the principals to the crime.

▮ In this circuit, the degree of knowledge required to convict an aider and abettor depends upon "the relationship between the defendant's acts and the ultimate crime for which he is charged...." *United States v. Greer,* 467 F.2d 1064, 1069 (7th Cir.1972). The intent to aid requirement of aiding and abetting is relaxed when the defendant's physical participation in the crime is substantial. *Id.* Absent such involvement, aiding and abetting requires either a specific intent to aid or the specific knowledge required for the crime charged. *Id.*

### A. *The Illegal Transportation*

▮ Matook's physical involvement in the transportation cannot be considered substantial. Smith violated § 2314 by carrying the stolen securities from Rhode Island to Illinois. He, not Matook, physically carried the securities, and Smith did not call on Matook to arrange for the transportation. There is no evidence that Matook acted as lookout enroute to Chicago. He was present along with Smith, but presence alone is not enough from which to infer an intent to aid. *United States v. Van Scoy,* 654 F.2d 257, 266 (3d Cir.1981); *United States v. Forrest,* 620 F.2d 446, 451 (5th Cir.1980). Matook stated at trial that he knew nothing about the stolen securities. Smith, who testified for the government, agreed. There is no evidence—direct or circumstantial—that Matook had the specific intent to aid the illegal transportation. For this reason, the government has not proved beyond a reasonable doubt either a

---

**9.** This matter could be relevant in another context where the scope of a co-conspirator's assent serves as a basis for holding him responsible for substantive crimes committed by his confederates. *See United States v. Greer,* 467 F.2d 1069 (7th Cir.1972). *See also United States v. Sampol,* 636 F.2d 621 (D.C.Cir.1980). But here, we are only concerned with whether there is evidence to convict Matook on the aiding and abetting charge. If with knowledge of the conspiracy and its essential plan, Matook at any point acted with intent of furthering the conspiracy, he is guilty of aiding and abetting it. He need not know all the prior·details or all its members. *United States v. Feola,* 420 U.S. 671, 692, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975); *Blumenthal v. United States,* 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947).

**10.** It has been noted that the rationale for establishing the offense of conspiracy is to lessen the opportunity for a culpable defendant to escape punishment because of the anonymity of his position within a group or because of the difficulty of tracing his precise contribution to a criminal plan. *See generally,* Note, *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 922 (1959). Here, in spite of the contradictory circumstantial evidence set forth above, both Matook and his friend Smith maintain that Matook never knew specifically what was happening. Even assuming Matook really did not know what crime was being committed, at least one circuit would consider him by the act of consciously avoiding that information in the face of his awareness that the business deal in Chicago involved criminal activity. *See United States v. Eckmann,* 656 F.2d 308 (8th Cir.1981).

specific intent to aid or the specific knowledge required for § 2314.

In *United States v. Beck,* 615 F.2d 441 (7th Cir.1980), the Seventh Circuit applied *Greer* to sustain an aiding and abetting conviction for illegal weapons exportation upon less than specific knowledge. *Id.* at 449. The evidence in *Beck* showed that the defendant was aware of a "legal duty" not to export. Beck, however, had substantially participated in the commission of the crime charged.[11] *Beck* does not stand for the proposition urged by the government, that a lesser showing of knowledge is always enough to convict an aider and abettor. Rather, *Beck* affirms the *Greer* view that the intent to aid requirement is only relaxed upon a showing of substantial participation or specific knowledge.

In the present case, Matook lacked specific knowledge, and he did not substantially participate in the events which made out elements of the offense of transportation of stolen securities. The substantial involvement present in *Beck* is not present here.[12] Accordingly, the Court finds Matook not guilty on Count II of aiding and abetting the illegal transportation.

### B.  *The Delivery And Sale*

 Once in Chicago, Matook's involvement became more substantial. He learned more about the criminal activity in which Smith was involved. Matook met the other participants; he physically acted as a lookout, both on the street and in the bank. Even assuming that Matook still did not have specific knowledge of the stolen securities, he took substantial action to help the venture succeed. Given his substantial participation in the events surrounding the delivery and attempted sale of the stolen securities, there is sufficient evidence from which to infer his intent to aid the commission of the offense described in § 2315. Accordingly, Matook is guilty on Count III.

### Conclusion

This Court finds Matook guilty on Count One of aiding and abetting the conspiracy; not guilty on Count Two of aiding and abetting the illegal transportation; and guilty on Count III of aiding and abetting the delivery and sale of stolen securities. Judgment is entered on the finding. A presentence investigation is ordered. A sentencing hearing will be conducted on January 20, 1983, at 9:30 a.m. The same bond may stand. It is so ordered.

---

11. Defendant Beck knew about an embargo in effect, wrote a letter stating his hope to circumvent it, took steps to make the exportation less conspicuous and balked at coming to Chicago for fear of arrest. 615 F.2d at 444–47.

12. In cases other than *Beck,* courts have likewise been willing to relax the intent to aid requirement only when the defendant's participation was substantial. *See United States v. Sacks,* 620 F.2d 239 (10th Cir.1980); *United States v. Tarr,* 589 F.2d 55 (1st Cir.1978); *United States v. Wedelstedt,* 589 F.2d 339 (8th Cir.1978); *United States v. Bobo,* 586 F.2d 355 (5th Cir.1978); *United States v. Carengella,* 198 F.2d 3, 7 (7th Cir.1952); *United States v. Gardner,* 171 F.2d 753 (7th Cir.1948). When a defendant is substantially involved, courts have been more inclined to infer guilty knowledge. However, the courts have had difficulty determining when the facts support an inference of guilty knowledge. *See United States v. Alvarez,* 610 F.2d 1250, *reversed en banc,* 625 F.2d 1196 (5th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).