The orders of the Appellate Division and county judge should be reversed and the relator remanded to custody.

HAIGHT, VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.

---

STATE BOARD OF PHARMACY, Respondent, *v.* FRED GASAU, Appellant.

**Public Health Law** — limitations upon power of state board of pharmacy to sue for penalties — construction of provisions permitting general merchants to sell cream of tartar and similar articles.

The authority of the state board of pharmacy to sue for penalties is limited to those accruing under article 11 of the Public Health Law.

On a prosecution for alleged violation of the Public Health Law by adulteration of drugs, when the adulteration is not shown to be within the provisions of section 41 of that law, the proof is fatally defective.

Defendant, a grocer, was charged with a violation of the Public Health Law in selling cream of tartar which was not of the standard strength and purity established by the latest edition of the United States Pharmacopœia. *Held,* that section 199 of that law, which permits general merchants to sell cream of tartar and certain other enumerated articles, also relieves them from the requirement that such articles should come up to the prescribed standard, when they are not sold as drugs or medicines.

The rule applied that where the enumeration of specific things is followed by some more general word or phrase, such general word or phrase is held to refer to things of the same kind.

*State Board of Pharmacy* v. *Gasau,* 122 App. Div. 803, reversed.

(Argued March 19, 1909; decided April 6, 1909.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 13, 1907, which affirmed a judgment of the Appellate Term affirming a judgment in favor of plaintiff entered upon a decision of the Municipal Court of the city of New York.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles M. Stafford* for appellant. Article 11 of the Public Health Law does not apply to the sale of cream of tartar by a grocer, because, when so sold, it is neither a drug nor a pharmaceutical preparation. (*Blaschko* v. *Wurster,* 156 N. Y. 437; *Matter of N. Y. & Brooklyn Bridge,* 72 N. Y. 527.)

*Hieronimus A. Herold* for respondent.

CULLEN, Ch. J. The original judgment under review was recovered for an alleged violation of certain provisions of the Public Health Law (L. 1893, ch. 661, as amended by L. 1900, ch. 667). The provisions of that law, so far as they are material to this case, are as follows:

" § 197. Adulteration or substitution of drugs, chemicals and medicines.— Subdivision 1. Unless otherwise prescribed for, or specified by the customer, all pharmaceutical preparations, sold or dispensed in a pharmacy, dispensary, store or

place, shall be of the standard strength, quality and purity, established by the latest edition of the United States Pharmacopœia.

" Subdivision 2. Every proprietor of a wholesale or retail drug store, pharmacy, or other place where drugs, medicines or chemicals are sold, shall be held responsible for the quality and strength of all drugs, chemicals or medicines sold or dispensed by him except those sold in original packages of the manufacturer, and those articles or preparations known as patent or proprietary medicines.

" Subdivision 3. Any person who shall knowingly, wilfully or fraudulently, falsify or adulterate any drug, medical substance or preparation, authorized or recognized in the said Pharmacopœia, or used or intended to be used in medical practice or shall knowingly, wilfully or fraudulently offer for sale, sell or cause the same to be sold, shall be guilty of a misdemeanor ; all drugs, medical substances, or preparations so falsified or adulterated shall be forfeited to the board and by the board destroyed.

" Section 199. Application of article limited.— This article shall not apply to the practice of a practitioner of medicine who is not the proprietor of a store for the dispensing or retailing of drugs, medicines and poisons, or who is not in the employ of such a proprietor, and shall not prevent practitioners of medicine from supplying their patients with such articles as they may deem proper, and except as to the labeling of poisons it shall not apply to the sale of medicines or poisons at wholesale when not for the use or consumption of the purchaser, or to the sale of paris green, white hellebore and other poisons for destroying insects, or any substance for use in the arts, or to the manufacture and sale of proprietary medicines, or to the sale by merchants of ammonia, bicarbonate of soda, borax, camphor, castor oil, cream of tatar, dye stuffs, essence of ginger, essence of peppermint, essence of wintergreen, non-poisonous flavoring essence or extracts, glycerine, licorice, olive oil, sal-ammoniac, saltpetre, sal-soda, epsom salts, rochelle salts, and sulphur, except as herein provided.   Pro-

vided, however, that in the several places in this state outside of incorporated cities and villages, and in incorporated villages of the fourth class, said places and villages not having therein or within three miles thereof a regularly licensed pharmacy or drug store, physicians may compound medicines, fill prescriptions, and sell poisons, duly labeling the same as required by this act, and merchants and retail dealers may sell the ordinary non-poisonous domestic remedies. Any division of the state board of pharmacy, having within its territory any such village or place, shall, whenever the necessity therefor is shown to exist, grant to some resident therein, who has had experience in dealing in drugs, medicines and poisons, a permit to compound medicines, fill prescriptions and sell poison for a period not exceeding one year, upon the payment of a fee not exceeding three dollars. Such permit shall be limited to the village or place in which such person resides and may be limited to one or more of the above classifications and to the sale of certain kinds or classes of poisons.

" Sec. 201. Subdivision 4. Any person violating any of the provisions of this article, in addition to, or irrespective of the punishment hereinbefore provided, shall forfeit to the state board of pharmacy the sum of twenty-five dollars for every such violation, which may be sued for and recovered in the name of said board and shall be paid to state board of pharmacy for its use, as in this article provided. All fines imposed and collected, under any of the provisions of this article, shall be paid over to the state board of pharmacy."

The violation of the statute charged against the defendant, who was a grocer, was that he sold cream of tartar which was not of the standard strength and purity established by the latest edition of the U. S. Pharmacopœia, in that it contained alum and calcium sulphate. The proof showed that the article sold by the defendant consisted of about 75 per cent pure cream of tartar, the remainder being alum.

It is very probable that the defendant sold an adulterated article, and it is also quite possible that in so doing he violated the law and subjected himself to a penalty, for section 164

of the Agricultural Law (L. 1893, ch. 338, as amended by L. 1903, ch. 524) defines food as including "all articles used for food, confectionery or condiments by man whether simple, mixed or compound," and by section 41 of the Health Law any one selling adulterated food is subject to a penalty of $100. This plaintiff, however, cannot maintain an action for such a penalty. Its authority to sue is limited to penalties accruing under article 11 of the Public Health Law, which deals with pharmacy. The question, therefore, is whether the defendant violated any provision of that article. The case might be very summarily disposed of. Section 41 of the Health Law prescribes that it shall be deemed an adulteration in the case of drugs: "1. If when sold under or by a name recognized in the United States Pharmacopœia, it differs from the standard of strength, quality or purity laid down therein. 2. If, when sold under or by a name not recognized in the United States Pharmacopœia, but which is found in some other pharmacopœia or other standard work on *materia medica*, it differs materially from the standards of strength, quality or purity laid down in such work." The name "cream of tartar" under which this article was sold is not recognized in the United States Pharmacopœia. Therefore, the case does not fall within the first section. There is no proof in the record that the name is found in any other pharmacopœia or standard work on *materia medica.* Had such proof been given, then the standard of purity and strength would, under the terms of the statute, depend upon the standard prescribed by the work in which the name was found, and not that in the United States Pharmacopœia, of what is said to be its equivalent, potassium bitartrate. The proof is, therefore, fatally defective.

There is, however, a more substantial objection to the plaintiff's right to recover, which is that the pharmacy article of the statute does not apply to the case. Under section 199 it is provided that the article shall not apply to the sale by merchants of several enumerated articles including cream of tartar. The majority of the Appellate Division were of opinion

that this provision, though it permitted general merchants, as well as druggists or apothecaries, to sell such articles, did not relieve the merchants from the requirement that the article sold should come up to the standard prescribed in the pharmacopœia. The learned judges who dissented took a contrary view and in that view we concur. We do not think it necessary to follow the various ways and times in which the statute has been amended, on which stress has been laid in the lower courts, for we think it clear from the character of the enumerated articles, as well as from the language of the statute, that it was not the intention of the legislature to make them conform to the standard of the pharmacopœia. Doubtless, cream of tartar is a chemical, but the word " chemical " is not used in the statute alone, but in conjunction with the words " drugs " and " chemicals." The rule of *ejusdem generis* applies, that is to say, that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is held to refer to things of the same kind. (*Burks* v. *Bosso*, 180 N.Y. 341, 344.) The term " chemicals," as found in section 197, is, therefore, to be limited to chemicals that are used as medicines or drugs. The pharmacopœia enumerates a great number of chemicals whose use for medicinal purposes is but an insignificant part of the whole consumption of the articles. Sulphuric acid is found in the pharmacopœia, and so are nearly all the other acids and salts which are the subject of general commerce. It would require a long line of decimals to express the almost infinitesimal fraction of the total output of sulphuric acid which is used in the practice of medicine. As to cream of tartar, the sale of which is the subject of this action, and which the counsel for the respondent insists is a pharmaceutical preparation, the annual importations of that article to this country amount approximately to $2,000,000, of which but a minute fraction is used as medicine. The standards of purity and strength in substances of this character when treated as an article of general commerce and when sold for administration as medicine necessarily and properly differ. It is not that adulteration in the popular sense (that is to say,

the unnecessary addition of foreign substances) can be justified even in commercial articles, but in the very production of an article it often does not appear in a pure state. To exclude impurities subsequent treatment is necessary ; in many cases several successive treatments. In the use of an article for some purposes the presence of certain impurities is of no consequence, and there is no reason why the manufacturer or consumer should be put to the expense of additional treatment. In other cases, the impurities may be most deleterious. Hence it is necessary to refine the article. It is a matter of common knowledge that the chemicals of the apothecary or druggist are of a much higher grade of purity and strength than the same articles when used for other purposes. It would be absurd to say that the sulphuric acid for use in refining petroleum and in the ordinary arts should be of the same standard as that which the physician prescribes for his patient. In the preface of the pharmacopœia is found this italicized statement : " The standards of purity and strength prescribed in the text of this pharmacopœia are intended to apply to substances which are used solely for medicinal purposes and when professedly bought, sold, or dispensed as such." It is true that this statement can in no way limit the effect of the statute of the state, but it is a recognition of what we have asserted to be a matter of common knowledge. It may be for this very reason that the pharmacopœia ignores as far as possible popular names, its authors appreciating that the cream of tartar, sal soda and saltpetre of commerce are substantially different articles from their chemical equivalents as given by the scientists.

The pharmacopœia requires potassium bitartrate to contain not less than 99 per cent of the pure article, while commercial cream of tartar contains from 2 to 9 per cent, and according to one authority, as high even as 13 per cent of calcium tartrate. (U. S. Dispensatory [18th ed.], p. 1081 ; Allen's Commercial Organic Analysis [3d ed.], vol. 1, p. 520.] Other articles excepted by the statute are sal soda and saltpetre. The equivalents of these, sodium carbonate and potassium

nitrate, are found in the pharmacopœia, which requires 85 per cent of the pure crystal in the first case and 99 per cent in the second case. It would seem hardly necessary to maintain this standard of purity in washing dirty clothes or in the manufacture of gunpowder, though it is said that quite a high grade is needed for the latter purpose. We are, therefore, of opinion that the various excepted articles enumerated in section 197, when not sold as drugs or medicines, are not required to conform to the standard prescribed by the pharmacopœia for medicinal preparations. If adulterated the vendors may be subject to other statutory penalties, but not to those imposed by article XI.

The judgment appealed from should be reversed and the complaint dismissed, with costs in all courts.

HAIGHT, VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.