**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard KASVIN, Defendant-Appellant.**

**No. 84–1292.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1984.

Decided March 13, 1985.

Rehearing and Rehearing En Banc Denied
May 14, 1985.

David S. Mejia, Chicago, Ill., for defendant-appellant.

Mary F. Harkenrider, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER, Circuit Judge, SWYGERT, Senior Circuit Judge, and DUPREE, Senior District Judge *

DUPREE, Senior District Judge.

Richard Kasvin along with seven others was charged in Count I of a four-count indictment with conspiring to knowingly and intentionally distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and in Count IV of the indictment with the substantive offense of possession with intent to distribute 234 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Following a directed verdict of acquittal as to Count IV Kasvin was convicted by a jury of Count I, the conspiracy count, and he appeals from a sentence of five years' imprisonment and a $15,000 fine. Finding no error in the trial, we affirm.

Six of Kasvin's co-defendants entered guilty pleas, and he and the remaining co-defendant, Tom Galiffa, were each tried and convicted in a joint trial held in April, 1983. Shortly thereafter Galiffa appealed his conviction, but as a result of Kasvin's post-trial motions for judgment of acquittal and in the alternative for a new trial final judgment in his case was not entered until January, 1984. Meanwhile the appeal in Galiffa's case had been argued on November 8, 1983, and the decision was rendered on May 11, 1984 while Kasvin's case was still pending on appeal. *United States v. Galiffa*, 734 F.2d 306 (7th Cir.1984). As we shall see, the decision in *Galiffa* provides much of the controlling law in the case at bar.

In late 1977 or early 1978 four of Kasvin's co-defendants named in the indictment

---

* The Honorable F.T. Dupree, Jr., Senior District Judge of the Eastern District of North Carolina, is sitting by designation.

agreed to purchase, sell and distribute marijuana. Over the next five years some twenty individuals were associated with the conspiracy and were engaged in such activities as couriers, distributors, bookkeepers, drivers, warehousers and dealers. The headquarters for the operation became a house in Ingleside, Illinois. As a result of surveillance by federal law enforcement officers this house was raided on April 9, 1982 at which time defendant Kasvin and seven others were arrested inside the house. A valid search warrant produced 234 pounds of marijuana, some cocaine, an electronic scale, $10,440 in cash, narcotics paraphernalia and records of numerous drug transactions.

In order to link Kasvin to the conspiracy the government called to the stand several of his co-defendants who had entered guilty pleas and one or more unindicted co-conspirators. These witnesses testified that Kasvin was known to them as "Smith" or "Smyth"; that the persons associated with the operation were given numbers and that Kasvin's number was 5; that No. 5 was the single largest "customer" of the business but that at times he provided the organization with some high quality marijuana apparently obtained by him through some other source; and that for more than a year Kasvin was seen at the organization's place of business several times weekly. A record of his phone number was kept by the organization in code.

A reconstruction of the records which the organization began keeping about July of 1981 showed that in the ensuing eight months prior to the raid on April 9, 1982 Kasvin obtained approximately 3,600 pounds of marijuana from the business and delivered to it well over $1,000,000 in cash.

At the close of the government's evidence the district judge expressed the opinion that the evidence outlined above did not suffice to show that Kasvin was a member of the conspiracy or that he had knowingly and intentionally possessed with intent to distribute the 234 pounds of marijuana seized in the raid. Accordingly, Count IV as it related to Kasvin was dismissed, but at the same time the judge expressed the view that the evidence was sufficient to go to the jury on the question of whether Kasvin was guilty of aiding and abetting the conspiracy. He therefore declined to dismiss Count I.

The defendants on trial, Kasvin and Galiffa, offered no evidence, and the case was submitted to the jury on Counts I and IV against Galiffa and Count I (the conspiracy count) against Kasvin. On Count I the jury was instructed as follows:

\* In order to establish the offense of conspiracy the government must prove these elements beyond a reasonable doubt: (1) that the alleged conspiracy existed, and, (2) that the defendant knowingly and intentionally became a member of the conspiracy.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.

In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.

In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant.

To be a member of a conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. A defendant need not personally perform all the acts alleged in Count 1. The government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.

Section 846 of Title 21 of the United States Code, which is the section under which Count 1 is brought, provides in pertinent part:

"Any person who conspires to distribute or possess with the intent to dis-

tribute a controlled substance commits an offense against the United States."

\* \* \* \* \* \*

You are instructed as a matter of law that marijuana is a Schedule·I controlled substance. It is not defined as a narcotic drug in the statute.

Any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate himself with the criminal venture, participate in it, and try to make it succeed.\*

\*\* You are instructed that the mere relationship of a buyer and seller of drugs does not alone establish a conspiracy.

While the relationship of buyer and seller is insufficient to make the buyer a conspirator with the seller, a buyer and seller in marijuana transactions can be conspirators together if they have an agreement·to act in concert. This agreement can be proven by circumstantial evidence.

Presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the defendant's guilt.\*\* [1]

After several hours of deliberations the jury returned the following verdict as to defendant Kasvin:

We, the jury, find the defendant, RICHARD KASVIN, GUILTY as charged in Count One of the indictment.

As previously stated, the case was submitted to the jury only on Count I as to Kasvin. The jury returned a guilty verdict against Galiffa as to Counts I and IV.

On appeal Kasvin asserts as error the trial court's instructions to the jury on aiding and abetting the conspiracy and the admission of the records kept by the conspirators under an exception to the hearsay rule.[2]

## INSTRUCTION ON AIDING AND ABETTING

 The decision in the case of Kasvin's co-defendant, *United States v. Galiffa*, 734 F.2d 306 (7th Cir.1984), established the following principles of law which apply with equal force in this case:

1. A defendant can be convicted of aiding and abetting a conspiracy for deeds other than acting as a liaison for the parties to the conspiratorial agreement provided the defendant has knowledge of the conspiracy's existence at the time of his act.

2. One can aid and abet a conspiracy without necessarily participating in the original agreement.

3. The charge of aiding and abetting under 18 U.S.C. § 2(a) "need not be specifically pleaded and a defendant indicted for a substantive offense can be convicted as an aider and abettor" upon a proper demonstration of proof so long as no unfair surprise results.

4. No fatal amendment to an indictment occurs where a defendant may have been convicted as a principal in a conspiracy by aiding and abetting it even though he was not charged with aiding and abetting in the original indictment.

---

1. That portion of the instructions between the single asterisks was tendered by the government. The portion between the double asterisks was tendered by defendant Kasvin. It was at the suggestion of counsel for Kasvin at the charge conference that the two were combined by the court and submitted to the jury.

Mr. TUITE: They are going to argue [the government's theory] and we are going to argue different. I think the court has picked up on our concern. The court will be telling them all the circumstances they can use in finding a conspiracy. That is for them to decide based on the arguments and the evidence.

2. Prior to the submission of the case to the jury the government continued to insist, and correctly so, we think, that the evidence would fully support a finding that Kasvin was a member of the conspiracy. Tr. pp. 504–506, 552. Without differentiating between the two defendants on trial one of the government's attorneys (with the court's permission, Tr. p. 507) argued this theory to the jury while the other argued the aiding and abetting theory.

In order to determine the applicability of these principles to the case at hand it is necessary to make only two factual inquiries: Whether Kasvin knew of the conspiracy's existence at the time of his acts and whether his acts aided and abetted the business of the conspiracy. In our view the evidence overwhelmingly supports an affirmative answer to each of these inquiries. For several years he had visited the headquarters of the conspiracy several times weekly, had been assigned a number just as some of the admitted members of the conspiracy had been assigned, his telephone number had been encoded, on occasion he provided the organization with marijuana for use in its business, his transactions with the conspiracy ran into hundreds of thousands of dollars annually but unlike an ordinary customer of a business, he simply picked up quantities of marijuana from headquarters, presumably disposed of it through a distribution network, and brought the money back from time to time in amounts which, so far as the records show, bore no definite relationship to the amounts of marijuana carried away at any particular time. To suggest in the face of this evidence that he was not aware of the conspiracy's existence would be to ascribe to him a naivete seldom seen in participants in a criminal venture of this magnitude. It is equally obvious that as a link in the distribution chain Kasvin not only aided and abetted the criminal operation but was indeed essential to its success.

At the time Kasvin's brief was filed in this court *Galiffa* had not been decided but following its decision a reply brief was filed in which it was stated:

> Although Kasvin and his counsel continue to regard [the principles enunciated in *Galiffa*] as erroneous, they do not expect one panel of this court to overrule a decision rendered by another panel. A petition for *en banc* consideration, if necessary, is, counsel recognize, the only means to revise the *Galiffa* opinion.

At the time counsel continue to argue that *Galiffa* is not dispositive of this case. Unlike *Galiffa*, so the argument goes, the trial judge in this case found that Kasvin was not a member of the conspiracy, and he was acquitted by the judge on the possession charge contained in Count IV of the indictment. Moreover, the argument continues, one does not aid and abet a conspiracy simply by purchasing the illegal product which the conspirators have for sale. The argument is flawed in several respects.

In the first place, it assumes that the trial judge ruled as a matter of law that Kasvin was not a member of the conspiracy. He did not. Apparently the judge interpreted the evidence to show only that Kasvin was an independent dealer in marijuana whose relationship to the conspiracy was simply that of buyer and seller. The case was submitted to the jury, however, on instructions which, as we have seen, permitted the jury to find Kasvin guilty of the crime of conspiracy as charged in Count I of the indictment as well as aiding and abetting the conspiracy, and the general verdict returned simply found Kasvin guilty of conspiracy as charged in Count I.[3]

While we agree that the evidence was susceptible of the interpretation apparently placed upon it by the trial court, in our view it was equally open to the interpretation that Kasvin was indeed a member of the conspiracy itself. The jury was not obliged to accept Kasvin's characterization by some of the witnesses as a "customer" of the organization but was at liberty to draw what seems to us to be the equally plausible inference based on the frequency of his contacts with the organization, the use of a number and one or more aliases to identify him on the books, the fact that he sometimes furnished substantial quantities of marijuana to the organization, and the nature and extent of the so-called "credit transactions" that this man was no arms-length customer in the usual sense but was in fact one of the principals in the drug distribution ring.

---

3. Since the evidence previously summarized fully supported both theories, the problem of a judicial amendment of the indictment dealt with in *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), does not arise in this case.

On the other hand, if the jury simply regarded Kasvin as a major customer of the ring, it was fully justified in finding that he associated himself with the criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed. It is difficult to imagine what greater contribution Kasvin could have made to the financial success of the venture than by becoming its largest regular customer. In short, if he was not a member of the conspiracy, he was clearly an aider and abettor of it.

The remaining arguments of the defendant have been disposed of in the case of Kasvin's co-defendant, Galiffa, which, it will be recalled, involved the identical instructions under consideration here. *United States v. Galiffa*, 734 F.2d 306, 309–313 (7th Cir.1984).[4]

### THE BUSINESS RECORDS

Approximately nine months prior to the raid in which defendants were arrested on April 9, 1982 the organization began keeping records of marijuana purchases and sales. These records consisted of receipts and disbursements showing incoming and outgoing shipments of marijuana and payments made in connection with the transactions. These records were entered in a general ledger by one of the defendants named in the indictment, Kathryn Rodger, a girlfriend of another of the conspirators, Stuart Ashenfelter, who, with another co-defendant, Leroy Schubert, headed up the conspiracy. Among these records were numerous receipts showing transactions between a "No. 5" and the organization, and other witnesses had identified Kasvin as being No. 5.

Following extensive questioning of Ashenfelter by counsel for the government and defendant Kasvin the trial judge found the records to have been made and kept in the course of a regularly conducted business activity by a person with knowledge as a regular practice of the business activity and that the records were trustworthy for the purpose for which they were offered. (Tr. pp. 330–332.) The records were therefore admitted as business records under Rule 803(6) of the Federal Rules of Evidence, and upon the further finding that the provisions of Rule 803(24) had been satisfied, the trial judge assigned this rule as an additional basis for admitting the records.[5]

On appeal Kasvin, while conceding that records are no less admissible because they reflect illegal transactions, *see United States v. McPartlin*, 595 F.2d 1321, 1349 (7th Cir.1979), strenuously contends that the records were shown not to have been reliable and that the trustworthiness requirements of Rule 803(6) and 803(24) were not satisfied. In support of this contention Kasvin points to Ashenfelter's testimony that at times the records were made by persons who may have been under the influence of cocaine; that it is probable that the records contained errors; that even if his girlfriend, Rodger, who lived in the house with him at the organization's headquarters, had made errors in keeping the records, she would not have been subject to discharge; that Ashenfelter himself was mistaken as to the number assigned to Kasvin on the books; that "there was no consistency of records as ordinarily found or supposed to be found in a legitimate business;" and that they were not regarded by Ashenfelter himself as being reliable.

---

**4.** As additional support for his argument Kasvin repeatedly calls attention to the fact that Count IV, the possession count, was dismissed at the close of the government's evidence. While the correctness of this ruling is not before us, in view of our finding that the evidence was sufficient to show Kasvin's membership in the conspiracy, it follows that the count should have been submitted to the jury at least under the principle established in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489

(1946). Kasvin's reliance on this questionable ruling in his favor is therefore misplaced.

**5.** In conformity with his view that the evidence failed to show Kasvin a member of the conspiracy the trial judge was careful to exclude as against Kasvin all hearsay statements of alleged coconspirators tending to link him with the conspiracy. Rule 801(d)(2)(E), F.R.E.

It appears, however, that on voir dire examination by the government Ashenfelter admitted that while he didn't keep the records for income tax purposes, he did keep them to show the amount of money owed by people to whom he distributed marijuana; that when errors were found that "hopefully they were corrected;" that the records were kept to show receipts of large sums of money as well as payments made by the organization to suppliers; and that the records would more accurately reflect the quantities of marijuana which passed through the headquarters than would Ashenfelter's memory.

▆▆▆ Under Rule 104 of the Federal Rules of Evidence preliminary questions concerning the admissibility of evidence are determined by the court. The focus of the business records exception under Rule 803(6) is the requirement that the record be made in the course of and as a regular practice of a regularly conducted business activity. *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir.1979). Business records may be excluded in the trial court's discretion if the source of information or the method or circumstances of preparation indicate lack of trustworthiness. *United States v. Patterson*, 644 F.2d 890, 900 (1st Cir.1981). Rule 102, F.R.E., requires that the Rules of Evidence be construed "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." We hold that the evidence in this case fully justified the finding by the trial court that all the requisites of Rule 803(6) were satisfied, and the records in question were properly admitted. *United States v. Hedman*, 630 F.2d 1184, 1197 (7th Cir.1980). This conclusion makes it unnecessary to consider and decide the admissibility of the records under Rule 803(24).

In summary, we hold that Kasvin was properly convicted under the general verdict either as a member of the drug ring conspiracy or as an aider and abettor of the same and that there was no error in the admission of the business records of the organization. The judgment of conviction is therefore

AFFIRMED.

SWYGERT, Senior Circuit Judge, dissenting.

The majority holds that the defendant was properly convicted of a conspiracy to knowingly and intentionally distribute and possess with intent to distribute marijuana because the defendant aided and abetted the conspiracy by purchasing large quantities of marijuana from the actual conspirators and because the evidence was sufficient to show that the defendant was a coconspirator. I dissent because the defendant could not have been convicted as an aider and abettor of the conspiracy and because the defendant was acquitted by the trial judge of being a member of the conspiracy.

I

The defendant's acquittal on the criminal conspiracy charge, *see* discussion *infra* at 897–901, does not necessarily insulate him from conviction for aiding and abetting the conspiracy. *See United States v. Powell*, —— U.S. ——, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984). *See also United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir.1984) (judge's *sua sponte* instructions on aiding and abetting the conspiracy was not an impermissible amendment of the indictment). Nevertheless, under the facts of this case, there was no warrant for the judge to give the aiding and abetting instruction.

I recognize that this circuit has recently given an expansive definition of aiding and abetting a conspiracy under 21 U.S.C. § 846. *See Galiffa*, 734 F.2d at 306. With all due respect, I nonetheless view *Galiffa* as giving an unjustified, overbroad definition of that term. The penetrating analysis that is required in these types of cases necessitates a much narrower definition than that announced in *Galiffa*.

In *Galiffa* the court held that the crime of aiding and abetting a conspiracy exists. It further held that the concept of aiding and abetting a conspiracy is not merely applicable in cases in which a defendant is alleged to have brought two or more persons together so that those two persons might themselves conspire. Rather, *Galiffa* holds that the concept is applicable in any situation in which a defendant knows a conspiracy exists, commits an act designed to further the conspiracy, and intends by his acts to aid the conspiracy. *Id.* at 310 (citing *United States v. Alvarez*, 610 F.2d 1250, 1257, *rev'd on other grounds*, 625 F.2d 1196 (5th Cir.) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1980); *United States v. Walker*, 621 F.2d 163 (5th Cir.1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Lane*, 514 F.2d 22 (9th Cir.1975); W. LaFave & A. Scott, Criminal Law § 61 at 462–63 (1972); Comment, *Complicity in a Conspiracy as an Approach to Conspiratorial Liability*, 16 U.C.L.A. L.Rev. 155, 162 (1968)). Employing this test, this court held that Galiffa aided and abetted the conspiracy by engaging in acts that facilitated the distribution of marijuana, e.g., driving on trips to pick up marijuana from suppliers, weighing and marking bales of marijuana, issuing receipts and delivering marijuana to customers, and being supported by the proceeds from the illegal operation. In my view this did not make Galiffa an aider and abettor but rather made him a coconspirator.

The concept of aiding and abetting that the court in *Galiffa* applied was that enunciated by Judge Learned Hand in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)—a concept which has been uniformly adopted by the federal courts of appeals. But that concept cannot be mechanically or formalistically applied without closely examining the actual meaning of "aid and abet."

Aiding and abetting requires activity that is integral to the illegal conduct yet extraneous of it. In other words, aiding and abetting connotes assisting or facilitating illegal conduct without directly engaging in that conduct. When a person engages directly in the conduct, he becomes a part of it—a principal—and is not aiding and abetting. *See* Perkins, *Parties to Crime*, 89 U.Pa.L.Rev. 581, 596–604 (1941).

These principles are applicable to conspiracy. In general, a conspiracy is an "agreement among two or more persons to commit a crime and an overt act in furtherance of the illegal agreement." *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973). Thus, a person aids and abets a conspiracy not by engaging in crimes that are the object of the conspiracy, but rather by engaging in separate conduct designed to facilitate the success of the conspiracy. There is some authority that the only manner in which a defendant may aid and abet a conspiracy is by bringing two other persons together to conspire. *See People v. Strauch*, 240 Ill. 60, 88 N.E. 155 (1909); Comment, *Developments in the Law—Criminal Conspiracy*, 72 Harv. L.Rev. 920, 934 (1959). There is some merit to this argument because the crime of conspiracy always requires the act of agreement. But it must be that certain other "extraneous acts" might also aid and abet a conspiracy if they facilitate agreement by keeping the group of conspirators together and the conspiracy going. Thus, liability for aiding and abetting a conspiracy might be imposed on a defendant who brings two parties together with the intention and knowledge that they will conspire, *see, e.g., Strauch*, 240 Ill. 60, 88 N.E. 55, or warns drug conspirators of undercover police activity, *see, e.g., Lane*, 514 F.2d 22, or permits one's home to be used as a rendezvous for drug trafficking, *see, e.g., United States v. Spetz*, 721 F.2d 1457, 1477–78 (9th Cir.1983), or provides police protection to drug dealers, *see, e.g., United States v. Ambrose*, 740 F.2d 505 (7th Cir.1984), or acts as a paid bodyguard to the principal of an illegal scheme to distribute stolen securities, *see, e.g., United States v. Miller*, 552 F.Supp. 827 (N.D.Ill.1982). In these cases, the clear theoretical and practical difference between aiding and abetting a conspir-

acy and aiding and abetting the substantive offense that is the object of the conspiracy simply was not and could not be merged.

I am aware that at least one other circuit has apparently adopted the broad concept of "aid and abet" announced in *Galiffa*. *See Walker*, 621 F.2d at 166–67. Although I believe that that case is distinguishable—there the defendant primarily argued that the aid and abet instruction was error because it implicitly lowered the Government's burden of proof—the court in *Walker*, as did the court in *Galiffa*, gave an overbroad interpretation of aiding and abetting a conspiracy.

Neither *Direct Sales Co. v. United States*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), nor *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), undermine the validity of this approach. In both of those cases the issue was what type of conduct on the part of a supplier was necessary to hold the supplier in the buyer's illegal conspiracy to distribute contraband. In *Falcone* the Court specifically refused to consider the Government's argument that a supplier could be connected with a conspiracy among the buyers on the basis of the aiding and abetting statute because it believed that, even if this were permissible, the Government had failed to prove the necessary element of knowledge of the conspiracy. The Court also refused to consider the Government's other argument that the sellers were actual conspirators because the Government could not prove that the sellers participated in the conspiracy.

In *Direct Sales* the Court reviewed a drug supplier's conviction for conspiracy where the Government acknowledged that its only theory of liability was that the supplier was a conspirator because it sold large quantities of drugs to buyers. The defendant then argued that *Falcone* insulated suppliers from conspiratorial liability on this theory. The Court disagreed noting that *Falcone* was based on the fact that the mere act of supplying "was [not] of such a character as imported an agreement or concert of action between the buyer and the seller amounting to conspiracy," *Direct Sales*, 319 U.S. at 709, 63 S.Ct. at 1268. Although the Court did make reference, in *dicta*, to "aiding and abetting a conspiracy," *id.*, it is unclear from the context whether the Court used that phrase as a term of art or whether it meant that suppliers as aiders and abettors become actual conspirators, *see United States v. Salerno*, 485 F.2d 260, 263 (3d Cir.1973), *cert. denied sub nom., Rossi v. United States*, 415 U.S. 994, 94 S.Ct. 1596, 39 L.Ed.2d 891, *reh'g denied*, 416 U.S. 1000, 94 S.Ct. 2415, 40 L.Ed.2d 778 (1974); *see also Developments*, *supra*, 72 Harv.L.Rev. at 931–32 and cases cited therein, or whether the aiding and abetting at issue is of the conspiratorial group or the crime of conspiracy, *see Developments*, *supra*, 72 Harv.L.Rev. at 934. Thus very little, if any, reliance can be placed on this *dicta* in support of the argument that suppliers or buyers can be aiders and abettors of a conspiracy to distribute contraband. *See* Comment, *supra*, 16 U.C. L.A. L.Rev. at 163–64 n. 31. This is particularly true in the case of buyers who are the actual distributees of contraband and who do not, even indirectly, share in the profits of the conspiracy.

Even those commentators who argue that sellers or buyers can be liable as aiders and abettors of a conspiracy do so on the premise that proof of an overt act is necessary to convict for conspiracy. *See* Comment, *supra*, 16 U.C.L.A. L.Rev. at 162. Unlike most other conspiracies conviction for drug conspiracy under 21 U.S.C. § 846 does not require proof of any overt act. *United States v. Lee*, 622 F.2d 787, *reh'g denied*, 633 F.2d 582 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). Thus reliance on those authorities to support the conviction of a buyer or seller who has only participated in objectives of the drug conspiracy as an aider and abettor of the conspiracy is misplaced.

In this case, the Government insisted at trial that a customer who frequently purchases large amounts of illegal goods from a conspiracy may under certain circum-

stances be found guilty as a coconspirator. But, as I note in Part III of this dissent, the trial judge found there was insufficient evidence to create an issue as to whether the defendant was a member of the conspiracy, and, even if it was questionable whether the judge was warranted in granting the directed verdict in favor of the defendant, this court may not engage in *de novo* decisionmaking at this juncture by second-guessing the trial judge.

Under this state of affairs the only charge that remained was that of aiding and abetting, and the only evidence to support this theory of liability was that the defendant was a frequent customer of the organization who bought large amounts of marijuana on credit and who was apparently a friend of the conspirators. But these distributions to the defendant were overt acts and objectives of the conspiracy. They were not extraneous to it; they are analogous to plunging the knife into the murder victim, not to providing the murderer with the knife. Although the majority suggests that "on occasion he [Kasvin] provided the organization with marijuana for use in its business," *ante* at 891, the only evidence that I am able to discern from the record with respect to this assertion is that at one time Kasvin paid for marijuana he had received from the conspirators with approximately twenty-three pounds of marijuana. No suggestion was ever made that this marijuana was used by the conspirators in their business, and, in fact, the Government argued only that this had been payment in-kind. Thus, in applying the analysis of what aiding and abetting a conspiracy means, the defendant's conduct did not come within that meaning.

The Fifth Circuit has correctly noted that the concept of aiding and abetting a conspiracy has "rarely [been] used," *Alvarez*, 610 F.2d at 1257. But given this circuit's decision in *Galiffa* and the extension of *Galiffa* to the facts of this case, the long arm of the law will now reach to impose conspiratorial liability on many who may have had little contact with the conspirators or who are clearly guilty of crimes less severe than conspiracy. *See United States*

v. *Gallagher*, 565 F.2d 981, 984–85 (7th Cir.1977); *United States v. Hoffa*, 367 F.2d 698, 732–33 (7th Cir.1966) (Swygert, J., dissenting). "The juxtaposing of the offenses of aiding and abetting and conspiracy in the same count of an indictment provide a basis for broadly expanding criminal liability with respect to complicitous parties," *Miller*, 552 F.Supp. at 830, and should have been considered with more circumspection and discreetness than that employed in *Galiffa* or by the majority here.

## II

Even if I were to agree that the broad theory of aiding and abetting a conspiracy as announced in *Galiffa* is correct and should govern this case, *Galiffa* does not compel the conclusion that "if the jury simply regarded Kasvin as a major customer of the ring, it was fully justified in finding that [Kasvin was an aider and abettor because] he associated himself with the criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed." *Ante* at 892. "A defendant is not culpable of aiding and abetting a conspiracy merely by aiding and abetting the commission of a crime which is the object of a conspiracy," *Miller*, 552 F.Supp. at 830 (citing *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946)).

Moreover, even if all of the other evidence introduced against Kasvin is considered and viewed in the light most favorable to the Government, it is insufficient under *Galiffa* to establish beyond a reasonable doubt that Kasvin associated himself with the criminal venture and sought by his actions to make it succeed. I concede that Kasvin knew of the conspiracy, but that is only part of the required analysis.

The evidence against Kasvin is that from approximately 1978 to 1982 he was a "constant" customer of the drug ring. From July 1981 to December 1981 he accounted for approximately fifteen percent of the organization's credit sales. Ninety-six percent of the organization's sales were on

credit. Kasvin, like all customers, was assigned a customer number for accounting purposes. Kasvin, as did other customers, picked up marijuana from the organization's headquarters. Kasvin frequently visited the organization's headquarters at times on business, some times on a social call. Kasvin's telephone number was encoded, along with the telephone numbers of friends and associates of the drug conspirators, on a card found in the wallet of a principal of the drug ring. There was no evidence that Kasvin issued receipts, helped package marijuana, or resided with the drug conspirators.

The only acts that show the defendant's connections to the drug ring are his frequent purchases of drugs from the organization. The credit sales, the assignment of a customer number to Kasvin, or the encoding of Kasvin's telephone number were all acts of the conspirators over which defendant had no control. This evidence shows only the motives of the conspirators in wishing to transact their business in an orderly manner and in wishing to keep in contact with Kasvin. It does not show that Kasvin desired a continued association with the conspirators.

Thus the only probative evidence against Kasvin on the aid and abet theory was that he accounted for approximately fifteen percent of the organization's credit sales. But if a person purchases fifteen percent of the goods of a department store that does not mean, without more, that the person seeks to make the store succeed or that he associates with it. Although the department store has an interest in keeping the customer because of the profits that customer provides, the customer does not necessarily have an interest in making or an intent to make the store succeed. He may proceed to another store if that store ultimately fails. Similarly in the instant case, Kasvin's purchases do not show that he sought to make the drug distribution conspiracy succeed. Although the suppliers may have relied on Kasvin as a distribution outlet we do not know if Kasvin's purchases from this conspiracy accounted for one percent or one hundred percent of his total contra-

band purchases, and hence no inference can be drawn from the mere fact of these purchases that Kasvin cared about the success of this drug organization. In sum, the facts indicate that Kasvin was nothing more than an independent entrepreneur. In *Galiffa*, by contrast, the facts show that Galiffa lived with the coconspirators over a long period of time, acted as a "go-fer" for the conspirators, and was supported by the profits of the drug ring. Thus, in *Galiffa* the inference could properly be drawn that Galiffa had an interest in the success of the conspiracy.

The result the majority reaches in this case is not only incorrect as a matter of law, but also represents an unwarranted extension of *Galiffa*. Although *Galiffa* did decide that under certain circumstances a person may be guilty of aiding and abetting a conspiracy, it did not necessarily decide the question of whether aiding and abetting the objective of the conspiracy aids and abets the conspiracy or whether being the distributee of a drug conspiracy aids and abets the objective of the conspiracy. The majority's refusal to consider these questions suggests an impermissible harmless error approach. *See infra* at 901.

### III

Defendant argued that one reason this case is not controlled by *Galiffa* is that in Kasvin's case the trial judge ruled as a matter of law that the evidence was insufficient to show that Kasvin was a coconspirator. The majority apparently interprets the defendant's argument as questioning whether the judge ever granted a directed verdict and thus implicitly challenging on appeal the sufficiency of the evidence with respect to that theory of liability. Thus in order to uphold Kasvin's conviction the majority must review and sustain the sufficiency of the evidence with respect to both theories of liability. *See Galiffa*, 734 F.2d at 309 n. 4. This the majority proceeds to do. It first rejects defendant's position that the trial judge directed a verdict on

this issue. It then holds that, contrary to the "view" expressed by the judge, the evidence was sufficient to link Kasvin to the conspiracy as a coconspirator. Finally, without considering any of the other arguments presented to distinguish *Galiffa*, the majority perfunctorily proceeds to extend Galiffa to the facts of this case.

I do not agree that this is the proper interpretation of defendant's argument. Defendant is not challenging *on appeal* the sufficiency of the evidence on the coconspiracy theory. The trial judge has already resolved this issue in his favor. For this reason, there was no question raised by either party on appeal whether the directed verdict was ever granted. Rather, Kasvin is arguing that one acquitted as a coconspirator may not be convicted as an aider and abettor of the conspiracy. *Galiffa* is distinguishable because in that case neither the trial judge nor the jury ever acquitted Galiffa of being a coconspirator. The validity of Kasvin's particular argument is questionable, however, in light of *Powell*, 105 S.Ct., 471; but it is unnecessary to resolve this issue because, on the evidence, Kasvin could not have been convicted as an aider and abettor.

Even if I were to agree with the majority's characterization of defendant's argument, I submit that the defendant was acquitted as a coconspirator, and hence there was no justification for the majority to discuss the coconspiracy theory. I concede that particular statements in the record and acts by the trial judge and trial counsel lend support to the majority's position on this issue: the district judge read the conspiracy count without any limiting instruction, defense counsel insisted upon and was granted an instruction that the mere relationship of buyer-seller does not establish a conspiracy, the government seemingly argued in closing that Kasvin was a coconspirator, and, as the majority notes, defense counsel appeared to concede that the prosecutor would argue that Kasvin was a conspirator. Nonetheless, when the record is examined as a whole, it is clear that but for the aiding and abetting charge the district court would have directed a verdict in

favor of Kasvin on the conspiracy count (Count I) and that all parties concerned understood that Count I only went to the jury on the aiding and abetting theory. This means that the district court at least *de facto* directed a verdict on the issue of whether Kasvin was a member of the conspiracy.

After the Government rested its case, Kasvin moved for a judgment of acquittal on the conspiracy (Count I) and possession (Count IV) charges. The trial judge granted the motion with respect to Count IV (Tr. 503), but denied the motion as to Count I solely on the basis that there was, in his view, sufficient evidence to convict Kasvin for aiding and abetting the conspiracy (Tr. 503, 506). When the Government persisted in its argument that Kasvin was a member of the conspiracy, the judge stated:

The cases that you are citing, including the Seventh Circuit case—I have read the cases you have cited—I really on the issue of whether or not he [Kasvin] was a member of the conspiracy.

[Prosecutor]: Correct. That is our argument, that he was a member of the conspiracy.

[The court:] *I have, in effect, ruled against you on that.*

[Prosecutor]: I understand that, but that doesn't keep me from arguing, does it?

[The court]: It doesn't keep you from arguing it except now we are going to take our motion call.

Tr. 503 (emphasis added).

At a later stage in the proceedings, the Government again advanced its conspiracy theory. The following colloquy ensued:

[Defense counsel]: If this argument is being made to reverse your Honor's ruling, I don't think he can do it. A judgment of acquittal has been entered.

[Prosecutor]: I am making it to try to convince the Court that the Court is in error in its conspiracy theory and that indeed Kasvin is a coconspirator.

[The court]: I am not saying that a buyer or a seller could not be a member of the conspiracy. I am saying in this par-

ticular case there is no evidence that he was anything other than an arms-length purchaser.... I will say this much: that if I don't give it I would probably have to direct a verdict with respect to *Mr. Kasvin because that is the only way I can see that you can hold him here.*

Tr. 533–35 (emphasis added).

[The court]: ... As a matter of fact, as I indicated before, I would be inclined to direct with respect to Count I if it ·weren't for the aiding and abetting theory that the government isn't pressing, but that I raised myself.

Tr. 548.

These statements by the trial judge compel the conclusion that even though the judge did not formally enter a directed verdict on Count I he held as a matter of law that Kasvin was not a coconspirator and that he would have directed out all of Count I if he had found specific caselaw prohibiting the giving of a jury instruction on the aid and abet theory.

Support for this proposition can be found in the Government's statements made at the sentencing hearing in response to concerns raised by the trial judge with respect to possible errors committed by admitting evidence against Kasvin as a coconspirator rather than as an aider and abettor and by giving a general instruction on aiding and abetting when it was never intended to apply to defendant Galiffa:

It is our position, your Honor, and as I think we indicated in our response, even though the instructions may not have the context in which the arguments were · had, *we argued strictly conspiracy as to Mr. Galiffa and strictly aiding and abetting as to Mr. Kasvin. So, I don't see how the jury could have confused those two. We argued that he [Galiffa] was part of the conspiracy and that Mr. Kasvin aided and abetted by his purchases and cash payments to the organization.*

Tr. Vol. 1 of Proceedings before Judge McMillen 31–32 (emphasis added). *See also* Tr. Vol. 3 of Proceedings before Judge McMillen, Government's Jury Arguments 31–32.

In addition, in its brief to this court the Government acknowledged that Kasvin was convicted solely on the aid and abet theory:

Although Judge McMillen suggested that the evidence was insufficient to prove Kasvin was a coconspirator, he determined that the evidence was sufficient to prove Kasvin aided and abetted the conspiracy, *and allowed Count I to go to the jury on the aid and abet theory* (Tr. 548; 562). The government continues to maintain that the evidence was sufficient to prove Kasvin was a co-conspirator. However, since Judge McMillen instructed the jury regarding aiding and abetting, the issue of whether Kasvin could have been convicted as a co-conspirator is not presented here.

Government's Brief at 2 n. 4 (emphasis added). And nowhere in its brief did the Government suggest that the coconspirator theory was a proper basis on which to sustain Kasvin's conviction. Although I concede that these statements by the Government could be intended to acknowledge that, even though the defendant may have been convicted by the jury as a coconspirator, it is equally probable that the defendant was convicted as an aider and abettor, and hence the validity of that theory of liability must be upheld by this court in order to obviate the necessity for a new trial. I believe, however, that the Government would have been far clearer in this regard if that had been its intention. Moreover, if this were its intention, then the Government must be conceding that there has been no challenge on appeal to the sufficiency of the evidence on the co-conspiracy theory.

The defendant as well appears to have interpreted the judge's ruling as an acquittal on the coconspirator theory of liability. At trial defense counsel argued repeatedly that the evidence was insufficient as a matter of law to hold defendant as a coconspirator. It seems improbable that a defense attorney who had almost convinced a trial

judge of the insufficiency of the evidence and who had properly preserved this issue for appeal would not have raised that issue on appeal had it still been a viable basis for reversing the defendant's conviction. Moreover, defendant asked this court for a judgment of acquittal based on the erroneous aid and abet instruction—not for a new trial. True, not too much reliance can be placed on possible litigation strategy; but when viewed in light of the other matters that I have pointed out, it bolsters the conclusion that the district judge, in fact, did hold as a matter of law that there was insufficient evidence to go to the jury on a coconspirator theory.

There is also considerable force in the argument that it can be inferred from the fact that the district judge's directed verdict in favor of Kasvin on Count IV (the substantive offense of the conspiracy) that the district judge held as a matter of law that Kasvin was not a coconspirator. Under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), one guilty of a conspiracy is guilty of all substantive offenses committed in furtherance of the conspiracy. It is true that one may be acquitted of the substantive offenses and still be convicted for conspiracy. *See, e.g., United States v. Duz-Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223 (9th Cir. 1981); *United States v. Haynes,* 554 F.2d 231 (5th Cir.1977). Such verdicts are generally regarded as inconsistent and incorrect as a matter of law. They are permitted to stand, however, out of deference to the jury's power to exercise leniency in a particular case. *United States v. Azzolino,* 651 F.2d 207 (3d Cir.), *cert. denied,* 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981). *See United States v. Maybury,* 274 F.2d 899 (2d Cir.1960) (Judge Friendly questions whether inconsistent verdicts are permissible in bench trials because no special policy considerations mandate deference to a legally incorrect compromise verdict by a trial judge). *But see United States v. West,* 549 F.2d 545, 553 (8th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977). *But cf. Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (per curiam) (inconsistent verdict rendered in bench trial in state court is not a ground for habeas corpus relief). But even if an inconsistent verdict in a bench or jury trial does not necessarily require the reversal of a defendant's conviction, it is still a legal error.

Thus if we analogize the rulings of the trial judge in the instant case to a bench trial we can infer that by directing out the substantive offense before the case went to the jury the judge also found as a matter of law that the defendant was not a coconspirator—for it is unlikely that a trial judge who presumably understands *Pinkerton* and the rule of inconsistent verdicts would deliberately commit a clear error. Indeed, the trial judge did suggest that one reason he directed out Count IV was that he believed there was no evidence to link Kasvin to the conspiracy as a coconspirator. *See* Tr. 492.

The majority refuses to accept this line of argument because in its view the district judge did not absolve Kasvin as a matter of law of being a coconspirator and hence the directed verdict on Count IV cannot in any way demonstrate that the district judge as a matter of law ruled in Kasvin's favor on the coconspirator theory. The majority in effect denies that the defendant's argument has any merit whatsoever, but then proceeds to contradict itself by stating, *sua sponte,* that the district judge erred under *Pinkerton* in dismissing Count IV. *See ante* at note 4. *See also ante* at 889 where majority essentially accepts defendant's argument. The majority prefers to believe that the trial judge committed a clear legal error rather than to accept the more reasonable and logically consistent view that the trial judge committed no error.

The majority also places emphasis on the fact that the jury returned a general verdict of guilty as to Kasvin on the conspiracy charge. But in this case the jury was given a general verdict form and the jury's guilty verdict is entirely consistent with the judge's instructions that an aider and abet-

tor has the same liability as a principal. *See Galiffa,* 734 F.2d at 309 n. 4.

Based on the foregoing, the record clearly demonstrates that the trial judge did rule as a matter of law that Kasvin was not a coconspirator. The majority maintains that the trial judge did not rule as a matter of law that Kasvin was not a coconspirator because he did not specifically direct out all of Count I. By so doing, the majority in essence rejects the very case on which it relies to sustain Kasvin's conviction—*Galiffa*—where this court held that "all indictments are to be read as if the 'alternative provided by the aiding and abetting statute, ... is included therein'." *Id.* at 312 (citations omitted). Thus, Count I of the indictment in this case contained at least two "constructive" counts, one which the judge directed out, the other which he did not. *See* Post-Trial Memorandum and Decision of District Judge at 1–2. I admit that the trial judge probably should have given a limiting instruction on Count I as to defendant Kasvin, but this error, if it was error, should not be compounded by the error of ignoring the judge's actual rulings.

In effect, the majority engages in a *de novo* review of the evidence and reverses the decision of the district judge on this issue. It does so by a cursory examination of the evidence and without discussing a single case dealing with the difficult issue of how much evidence is necessary to hold a buyer as a member of a conspiracy. The majority's reaction is tantamount to directing a verdict in favor of the Government which, of course, is impermissible, *see United States Broth. of Carpenters & Joiners of America v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947), and which deprives the defendant of any opportunity to contest the sufficiency of the evidence on that theory.

In my view, the majority's characterization of the defendant's argument as challenging the sufficiency of the evidence and its repeated discussion of the evidence with respect to the coconspiracy theory is a tacit admission of a harmless error approach— i.e., even if Kasvin was not an aider and

abettor, he was certainly a coconspirator, and therefore he should be convicted of conspiracy. If this is indeed the majority's approach, an egregious error has been made. The doctrine of harmless error was never meant to wipe away fundamental procedural defects and to permit a conviction to stand willy nilly without regard to the requirements of due process.

In summary, under the narrow concept of aiding and abetting a conspiracy, Kasvin, as a purchaser of drugs from the conspiracy, did not aid and abet the conspiracy. Furthermore, even if the expansive concept of aiding and abetting a conspiracy as announced in *Galiffa* is applied, the evidence is insufficient to show that Kasvin was an aider and abettor. I submit that the trial judge directed a verdict in favor of defendant on the issue of coconspiratorial liability. Because I find that Kasvin could not have been convicted as an aider and abettor and that he was acquitted by the trial judge on the coconspiracy theory, I would reverse the conviction. *See Galiffa,* 734 F.2d at 309 n. 4.